IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| THE HULLVERSON LAW FIRM, P.C., JOHN E. HULLVERSON, THOMAS C. HULLVERSON, THOMAS M. BURKE, MARK J. BECKER and STEPHEN H. RINGKAMP,<br><br>      Plaintiffs,<br><br>v.<br><br>LIBERTY INSURANCE UNDERWRITERS, INC.,<br>(Serve Registered Agent:<br>      CSC-Lawyers Incorporating<br>        Service Company<br>      221 Bolivar<br>      Jefferson City, MO 65101)<br><br>      Defendant. | **JURY TRIAL DEMANDED**<br><br><br>No. |

## COUNT I

### COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiffs, in accordance with Rule 57 of the Federal Rules of Civil Procedure, for their Complaint for Declaratory Judgment, state to the Court as follows:

    1.    Defendant Liberty Insurance Underwriters, Inc. is a foreign corporation organized and existing under the laws of the State of New York, with its principal place of business in New York, and at all times pertinent hereto, is and was authorized to do, and doing, business in the State of Missouri with authority to sue and be sued.

    2.    Plaintiff, The Hullverson Law Firm, P.C., is a Missouri corporation with its principal place of business in the State of Missouri.

3. Individual Defendant Thomas C. Hullverson is a resident of the State of Arizona. John E. Hullverson is a resident of the State of California. Thomas M. Burke, Mark J. Becker and Stephen H. Ringkamp are residents of the State of Missouri.

4. The amount in controversy in this action, exclusive of interest and costs, exceeds the sum of $75,000.00.

5. Because complete diversity of citizenship exists between Plaintiffs and the Defendant, and because the amount in controversy in this action exceeds the sum of $75,000.00, jurisdiction is proper in this Court pursuant to 28 U.S.C., Section 1332, and 28 U.S.C., Section 1446.

6. The Defendant Liberty Insurance Underwriters, Inc., (hereinafter "Liberty") issued a policy of Lawyers Professional Liability Insurance, Policy No. LPA300976-0111 with a policy period from October 26, 2011 through October 26, 2012. A true and complete copy of said policy is attached hereto as Exhibit 1, and incorporated by reference as if fully set forth herein.

7. The Hullverson Law Firm, P.C., is and was the named insured under said policy.

8. On or about January 27, 2012, James E. Hullverson, Jr. filed a Complaint with attachments in the United States District Court for the Eastern District of Missouri which is now pending as Cause No. 4:12-CV-144(JAR). In said Complaint, the Plaintiff has alleged, among other things, a claim for damages against each of the Defendants therein (Plaintiffs herein) based upon various and sundry activities related to advertising of The Hullverson Law Firm in the yellow pages, other phone books, and on the internet.

The Plaintiffs herein deny any liability to James E. Hullverson, Jr. and have filed a Motion to Dismiss the claims of James E. Hullverson, Jr. Said Motion is currently pending in Cause No. 4:12-CV-144(JAR).

9. On or about January 31, 2012, by correspondence delivered via Federal Express, the Plaintiffs herein notified the Defendant Liberty of the filing of said Complaint by James E. Hullverson, Jr. and requested that Defendant Liberty provide defense and indemnity pursuant to the aforementioned policy of professional liability insurance, LPA300976-0111. A copy of the aforementioned Complaint and its attachments by James E. Hullverson, Jr. was included with said correspondence.

10. On or about February 3, 2012, via Federal Express and facsimile, correspondence was delivered to Defendant Liberty advising that the Summons and Complaint were served on The Hullverson Law Firm, Mark J. Becker, Thomas M. Burke, and Stephen H. Ringkamp. Copies of the Summons on each of the aforementioned, together with a copy of the Complaint and attachments were included with that correspondence. Again, request was made that Defendant Liberty take immediate steps to protect the interests of The Hullverson Law Firm and all named Defendants in Cause No. 4:12-CV-144(JAR), all under the terms of the aforementioned policy issued by the Defendant Liberty to The Hullverson Law Firm.

11. On or about February 7, 2012, at approximately 3:30 p.m., Mr. Bob Tighe, on behalf of Defendant Liberty, orally advised Stephen H. Ringkamp by telephone that Defendant Liberty denied coverage under the aforementioned policy of professional liability insurance in connection with the Complaint 4:12-CV-144(JAR). Prior to said

denial of coverage, no one on behalf of Defendant Liberty had any contact with any of the Plaintiffs, and, to the knowledge of the Plaintiffs herein, conducted no investigation or research into the underlying Complaint. Said Defendant Liberty continues to deny coverage to the Plaintiffs herein under the aforementioned policy of professional liability insurance.

12. On or about February 8, 2012, Stephen H. Ringkamp, via facsimile transmission, forwarded correspondence to Mr. Bob Tighe at Defendant Liberty. In said letter of February 8, 2012, Stephen H. Ringkamp detailed the policy provisions requiring coverage of the Plaintiffs herein under the aforementioned policy of professional liability insurance in connection with the Complaint No. 4:12-CV-144(JAR). Demand was again made upon Defendant Liberty to defend and indemnify all Defendants therein.

13. On or about February 10, 2012, via facsimile and certified mail, Defendant Liberty, through Mr. Robert J. Tighe, again denied coverage, and denied defense and indemnity, of any of the Plaintiffs herein. Defendant Liberty has continued to deny coverage under the aforementioned policy of professional liability coverage.

14. On or about February 15, 2012, via facsimile transmission, email, and regular mail to Mr. Robert Tighe at Defendant Liberty, Plaintiffs again demanded coverage, indemnity, and defense under the aforementioned policy of professional liability coverage issued by Defendant Liberty. Said correspondence of February 15, 2012, contained extensive and detailed analysis and quotation of the policy provisions of said policy and again demanded defense, indemnity, and coverage as well as a reversal of

the position taken by Defendant Liberty in its telecopy transmission of February 10, 2012.

15. On February 15, 2012, Robert J. Tighe, on behalf of Defendant Liberty advised that the correspondence referenced in the preceding paragraph had been received and forwarded to Mr. Tighe's manager, Chuck Levine, for review.

16. No response to the aforementioned letter from Stephen H. Ringkamp to Defendant Liberty dated February 15, 2012, was received until Thursday, March 29, 2012 via email from Robert Tighe on behalf of Defendant Liberty. Said email of March 29, 2012 transmitted a letter from Mr. Tighe on behalf of Defendant Liberty dated March 28, 2012. Said letter was also received by The Hullverson Law Firm via certified mail postmarked March 29, 2012. In said letter of March 28, 2012, from Mr. Tighe on behalf of Defendant Liberty, said Defendant "reiterated" its prior denial of coverage outlined in its letter dated February 10, 2012. Said letter of March 28, 2012 denied coverage on the grounds that the Complaint in No. 4:12-CV-144(JAR) did not seek "damages" as defined under the aforementioned professional liability policy, and claimed that the underlying Complaint did not arise out of "professional legal services" as defined by the policy. Said letter claimed that the "wrongful act" "still must arise out of the rendering or failing to render 'professional legal services'."

17. On or about April 20, 2012, via Federal Express delivered April 23, 2012, Joan M. Lockwood, of the firm of Gray, Ritter & Graham, P.C. on behalf of Plaintiffs, forwarded a detailed analysis of the underlying facts and the policy provisions of the aforementioned policy of professional liability coverage to Mr. Robert Tighe at

5

Defendant Liberty. Demand was again made for defense and indemnity under said policy issued by Defendant Liberty. No one on behalf of Defendant Liberty even acknowledged that letter of April 20, 2012, and did not respond thereto.

18.     On or about May 16, 2012, additional correspondence was transmitted to Mr. Robert Tighe at Defendant Liberty expressing displeasure that Ms. Lockwood had not received any response or acknowledgement of her prior letter of April 20, 2012. Thereafter, Defendant Liberty finally contacted Ms. Lockwood to advise that the matter was under review by coverage counsel. Defendant Liberty through its coverage counsel finally responded to the request for indemnity on October 3, 2012. Liberty concluded that the policy did not provide coverage in this claim and only agreed to provide a defense under reservation of rights from October 3, 2012 forward. Liberty further refused to indemnify for past incurred attorneys' fees, costs and expenses.

19.     At all pertinent times, Defendant Liberty's policy No. LPA300976-0111 was in full force and effect and all premiums requested by Defendant Liberty had been paid. The named insured under said policy is and was The Hullverson Law Firm, and additional insureds under the terms of said policy include all of the Plaintiffs herein.

20.     The claim against the Plaintiffs herein contained in Complaint No. 4:12-CV-144(JAR) was first made against the Plaintiffs herein during the policy period and reported to Defendant Liberty in writing and Plaintiffs herein are in compliance with all conditions precedent of said policy of professional liability insurance.

21.     The following quoted portions of the professional liability policy LPA300976-0111 issued by Defendant Liberty to The Hullverson Law Firm as the

named insured reference the pagination utilized by Defendant Liberty in its Missouri Lawyers Professional Liability Policy, form No. LIU 1400-MO ED.12 08 (hereinafter referred to as "LIU 1400"). The aforementioned policy contains a coverage clause which provides in pertinent part as follows:

> "**We** agree to pay on **your** behalf all **damages** in excess of the deductible amount and up to the limits of liability stated in the Declarations that **you** become legally obligated to pay, provided such **damages**:
>
> 1. result from **claims**
>
>    a. first made against **you** during the **policy period** or any extended reporting period, if applicable, and
>
>    b. reported to **us** in writing; and
>
> 2. are caused by a **wrongful act** which takes place before or during the **policy period** but not before the Retroactive Date set forth in the Declarations, if any." LIU 1400, page 1 of 13.

The aforementioned claim by James E. Hullverson, Jr. constitutes a claim for damages made during the applicable policy period and contains reference to alleged wrongful acts (denied by the Plaintiffs herein) which allegedly took place before or during the policy period and the declarations page applicable to Defendant Liberty's policy contains no retroactive date in the declarations page. Again, the Plaintiffs herein deny that any acts alleged by James E. Hullverson, Jr. in the underlying Complaint were in any way "wrongful".

7

22. LIU 1400, page 2 of 13, contains the definition of "claim" as follows:

"**Definitions**

Whenever the specially defined terms below are used in the policy they will be printed in uncapitalized, boldface type **thus**. . . .

    2.    **claim** means a demand received by **you** for money or services, including the service of suit or institution of arbitration proceedings against **you**, or a **disciplinary proceeding**."

With respect to each of the Plaintiffs herein (insureds under Defendant Liberty's policy), the underlying Complaint seeks damages against each of the insureds in Count I, paragraphs e, i and j; and respectively in Counts II, III, IV, V, and VI in their respective paragraphs f, j, and k. The underlying Complaint clearly constitutes a claim demanding that each of the insureds under Defendant Liberty's policy "pay money". LIU 1400, at page 2 of 13 contains the definition that the term "damages" means "monetary judgment or settlement . . . ." Thus, the underlying suit clearly constitutes a claim for damages. The fact that other remedies have been sought in the underlying Complaint does not make it any less a claim for damages. Any reliance by Defendant Liberty on the fact that other remedies may be sought in the underlying Complaint therefore is untenable and bespeaks the bad faith of Defendant Liberty in denying coverage.

23. LIU 1400, page 2 and 3 of 13 provides as follows:

"8.    **personal injury** means . . .

    c.    injury arising out of an offense occurring in the course of the **named insured's** advertising activities, including but not limited to infringement of copyright, title slogan, patent,

8

>trademark, trade dress, trade names, service mark or service number."

Virtually all of the allegations in the underlying Complaint relate to the advertising activities of the Plaintiffs herein over a course of roughly 14 years. These alleged advertising activities are variously characterized by the Plaintiff in the underlying Complaint as alleged violations of the Lanham Act and infringements upon the underlying Plaintiff's trademark, service mark, trade name, etc. While Plaintiffs deny the validity of any such characterization, the allegations are expressly and clearly within the terms of Defendant Liberty's policy definition of personal injury as related to the **named insured's** advertising activities. Defendant Liberty, in its multiple denials of coverage, has not referenced said policy provision and has not even attempted to explain why that provision does not apply to provide coverage in this case. Such failure to do so constitutes another demonstration of the bad faith of Defendant Liberty in its denial of coverage.

>24. LIU 1400, at page 3 of 13 provides a definition in pertinent part as follows:
>
>>"11. **professional legal services** means legal services and activities performed for others as:
>>
>>a. a lawyer;" . . . .

The word "others" is not defined by the policy. Any advertising activities performed or directed by an insured plainly "arise out of and relate to" activities performed for others. Advertising is an integral component of performing professional legal services. One does not cease being an attorney merely because of advertisement. To the contrary, an attorney advertises legal services precisely because of the status as an attorney. An

9

attorney's or law firm's use of stationery, trade name, signage on a door, website design, and statements, slogans, telephone directories — all arise out of and relate to rendering legal services. "Arising out of" used in definition 8.c. (page 3 of 13 — LIU 1400) is broad language. Nothing in the policy limits the definition of "personal injury" or "professional legal services" to those involving a claim for professional negligence or malpractice in the context of an attorney/client relationship.

25. As such, any attempt by Defendant Liberty purportedly denying coverage by reason of the absence of an attorney/client relationship between the Plaintiffs herein and James E. Hullverson, Jr. is untenable and without merit. Such attempts bespeak the bad faith of the Defendant Liberty in denying coverage under its policy when such coverage is expressly mandated.

26. LIU 1400, page 3 of 13, provides a definition as follows:

> "15. **wrongful act** means any actual or alleged act, error, omission or **personal injury** which arises out of the rendering or failure to render **professional legal services**."

This definition specifically and expressly includes in the definition of "personal injury" the provisions of the definition at LIU 8.c (page 3 of 13) related to injury arising out of "advertising activities" <u>including but not limited to</u> (emphasis supplied) . . . infringement of . . . trademark . . . trade names . . ., etc.

27. LIU 1400, page 5 of 13, contains an exclusion as follows:

"<u>**Exclusions**</u> . . .

> 2. <u>**Fraudulent, Criminal, Malicious, Deliberately Wrongful Acts, or Omissions**</u>. This policy does not apply to any judgment or final adjudication based upon,

10

> arising out of or in any way related to any dishonest, fraudulent, criminal, malicious or deliberately wrongful acts or omissions committed by **you**. **We** will defend allegations of the foregoing acts or omissions until the time they are finally adjudicated or admitted by **you**."

This exclusion applies only where there has been a judgment or final adjudication or admission by the insureds. None of those events have taken place. This paragraph expressly obligates Defendant Liberty to defend any such allegations. Any reliance on this exclusion by Defendant Liberty is unsupported and evidences its bad faith in denying coverage under its policy.

      28.    LIU 1400, page 6 of 13, contains the following exclusion:

> "5.    **Insured versus Insured**. For the purpose of this sub-section, the term 'insured' shall mean 'you'. This policy does not apply to any **claim** made by one or more insured against another insured unless an attorney/client relationship exists."

The Plaintiff in the underlying Complaint, James E. Hullverson, Jr., was last a member of The Hullverson Law Firm over 14 years ago. During that time, James E. Hullverson, Jr. has not provided any professional legal services on behalf of The Hullverson Law Firm or any other Plaintiff. As such, he cannot conceivably be an "insured" as that term is defined in paragraph 16 of the definitions section of LIU 1400, pages 3 and 4 of 13. Therefore, James E. Hullverson, Jr., the Plaintiff in the underlying Complaint, is not and cannot be a "named insured" or an "insured" under the policy. Any pretext by Defendant Liberty of denial of coverage on the basis that the underlying Complaint is by an "insured" against an "insured" is devoid of merit and additional evidence of the bad faith of Defendant Liberty in its denial of coverage.

11

29. In pertinent part, LIU 1400, page 7 of 13 provides as follows:

**"Defense of Claims**

**We** have the right and duty to defend any **claim** against **you** including the appeal thereof seeking **damages** to which this insurance applies even if any of the allegations of the suit are groundless, false, or fraudulent." . . .

Under this "defense of claims" language of the aforementioned policy, Defendant Liberty is obligated to defend the underlying claim since the underlying Complaint seeks damages against the Plaintiffs herein. This provision expressly provides that Defendant Liberty's duty to defend applies even if any of the allegations of the suit are groundless, false or fraudulent. Defendant Liberty has failed and refused to do so despite the express coverage and obligations imposed by the language of the policy itself. Such refusal and failure again demonstrates the bad faith of the Defendant Liberty in its denial of coverage.

WHEREFORE, Plaintiffs pray judgment against the Defendant Liberty Insurance Underwriters, Inc., and that this Court declare the rights of the parties under the aforementioned policy of professional liability insurance, and enter judgment finding, adjudicating, and declaring that Defendant Liberty has the duty to defend and indemnify each and all of the Plaintiffs herein in connection with the lawsuit, Complaint, and causes of action alleged in the underlying Complaint, No. 4:12-CV-144(JAR); that each of the Plaintiffs herein is an "insured" under Defendant Liberty's policy; that none of the provisions of the aforementioned policy exclude coverage for any of the Plaintiffs herein;

for such other and further relief as this Court considers proper under the circumstances, and that costs expended herein be assessed against Defendant Liberty.

## COUNT II

## BREACH OF CONTRACT

Plaintiffs, for Count II of their additional cause of action against Defendant Liberty Insurance Underwriters, Inc., state as follows:

30. All of the allegations of Count I of this Complaint are adopted, re-alleged, and incorporated by reference as if fully set forth herein.

31. At all pertinent times, policy No. LPA300976-0111 was in full force and effect and all premiums requested by Liberty have been paid.

32. The type and kind of claims involved in James E. Hullverson, Jr.'s lawsuit are of the type and kind covered by the aforementioned policy of professional liability insurance.

33. Plaintiffs are in compliance with all conditions precedent of the policy of professional liability insurance, and Defendant Liberty has denied the claim nonetheless.

34. Plaintiffs have made repeated demands upon Defendant Liberty to undertake the defense of Plaintiffs in defending claims covered by the policy and to indemnify Plaintiffs and pay any judgment rendered against Plaintiffs.

35. By denying Plaintiffs' demand for defense and indemnification, Defendant Liberty breached the contract for professional liability insurance.

36. As a result of Defendant Liberty's breach of contract, Plaintiffs suffered damages including but not limited to legal expenses in defending themselves against James E. Hullverson, Jr.'s lawsuit.

37. In the event that damages are awarded against Plaintiffs in James E. Hullverson, Jr.'s lawsuit or that Plaintiffs are forced to pay defense fees, expenses, or costs, Plaintiffs, as a direct and proximate result of Defendant Liberty's breach in refusing to defend Plaintiffs and/or indemnify Plaintiffs, will be damaged by Defendant Liberty's breach for the full amount of any such damage award or payment and the costs and expenses, including attorneys' fees arising therefrom.

WHEREFORE, Plaintiffs pray for judgment on Count II for Breach of Contract against Defendant Liberty for such amount of money damages as is fair and reasonable under the circumstances, including payment of all attorneys' fees, costs, interest, and expenses incurred by each of the insureds herein in conducting the defense of the underlying Complaint, and for such other relief the Court deems just and proper.

## COUNT III

## VEXATIOUS REFUSAL TO PAY

Plaintiffs, for Count III of their additional cause of action against Defendant Liberty Insurance Underwriters, Inc., state as follows:

38. All of the allegations of Counts I and II of this Complaint are adopted, re-alleged, and incorporated by reference as if fully set forth herein.

39. To date, Plaintiffs have expended monies in defense of the underlying Complaint and will continue to do so in the future until such time as Defendant Liberty

undertakes the defense, without reservation of rights, and full indemnification of the Plaintiffs herein.

40. Defendant Liberty's continued refusal to pay Plaintiffs amounts owed under the aforementioned policy of professional liability insurance is willful and without reasonable cause, and therefore constitutes vexatious refusal to pay under Section 375.296 of the Revised Statutes of the State of Missouri entitling Plaintiff to the vexatious refusal damages specified in Section 375.420 of the Revised Statutes of Missouri, including but not limited to attorneys' fees.

WHEREFORE, Plaintiffs pray for judgment on Count III for Vexatious Refusal to Pay against Defendant Liberty in the amount of twenty percent (20%) of the first fifteen hundred dollars ($1,500.00) of Plaintiffs' damages plus ten percent (10%) of the amount of Plaintiffs' damages in excess of fifteen hundred dollars ($1,500.00), for reasonable attorney's fees, for interest at a rate of nine percent (9%) per annum from the date of the judgment, for their costs herein, and for such other relief as the Court deems just and proper.

## COUNT IV

### BAD FAITH FAILURE TO DEFEND AND INDEMNIFY

Plaintiffs, for Count IV of their additional cause of action against Defendant Liberty Insurance Underwriters, Inc., state as follows:

41. All of the allegations of Counts I, II, and III of this Complaint are adopted, re-alleged, and incorporated by reference as if fully set forth herein.

42. At all times relevant to the acts complained of herein, Defendant Liberty had and owed to Plaintiffs a duty to act in good faith and to deal fairly with Plaintiffs with respect to the policy of professional liability insurance.

43. At all times relevant to the acts complained of herein, Defendant Liberty had and owed to Plaintiffs a duty to defend Plaintiffs against damages and claims covered by the aforementioned policy of professional liability insurance.

44. At all times relevant to the acts complained of herein, Defendant Liberty had and owed to Plaintiffs a duty to indemnify Plaintiffs against damages and claims covered by the policy of professional liability insurance.

45. Defendant Liberty had a duty to thoroughly investigate the underlying claims or the facts related to coverage and failed to do so.

46. Defendant Liberty, in bad faith, refused and continues to refuse to undertake the defense of Plaintiffs in defending against the underlying action and refused and continues to refuse to indemnify Plaintiffs on James E. Hullverson, Jr.'s claims, thereby breaching its duties and obligations under the policy of professional liability insurance.

47. Plaintiffs have been damaged by Defendant Liberty's breach of its duty of good faith and fair dealing, duty to investigate, duty to defend, and duty to indemnify in refusing to defend Plaintiffs and/or refusing to indemnify Plaintiffs in that Plaintiffs have been required to undertake their own defense and engage legal counsel at great expense to defend against the underlying action.

48.	In the event that damages are awarded against Plaintiffs on the underlying action, Plaintiffs, as a direct and proximate result of Defendant Liberty's breach in refusing to defend Plaintiffs and/or refusing to indemnify Plaintiffs, will be damaged by Defendant Liberty's breach for the full amount of any such judgment or settlement obligating Plaintiffs to make payment and the costs and expenses, including attorneys' fees, arising therefrom.

WHEREFORE, Plaintiffs pray for judgment on Count IV for such damages and attorneys' fees and expenses as are fair and reasonable under the circumstances for Defendant Liberty's bad faith failure and refusal to defend and indemnify, and for such other relief as the Court deems just and proper.

Respectfully submitted,

GRAY, RITTER & GRAHAM, P.C.

Date:  10/26/12

By: _____
Robert F. Ritter #20699MO
Joan M. Lockwood #42883MO
Attorneys for Plaintiffs
701 Market Street, Suite 800
St. Louis, MO 63101-1826
(314) 241-5620
Facsimile: (314) 241-4140
Email:  rritter@grgpc.com
Email:  jlockwood@grgpc.com