IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| THE HULLVERSON LAW FIRM, P.C., JOHN E. HULLVERSON, THOMAS C. HULLVERSON, THOMAS M. BURKE, MARK J. BECKER and STEPHEN H. RINGKAMP, | **JURY TRIAL DEMANDED** |
| Plaintiffs, | |
| v. | Case No. 4:12-CV-01994(CAS) |
| LIBERTY INSURANCE UNDERWRITERS, INC., | |
| Defendant. | |

## COUNT I

## FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiffs, in accordance with Rule 57 of the Federal Rules of Civil Procedure, for their First Amended Complaint for Declaratory Judgment, state to the Court as follows:

1.  Defendant Liberty Insurance Underwriters, Inc. is a foreign corporation organized and existing under the laws of the State of New York, with its principal place of business in New York, and at all times pertinent hereto, is and was authorized to do, and doing, business in the State of Missouri with authority to sue and be sued.

2.  Plaintiff, The Hullverson Law Firm, P.C., is a Missouri corporation with its principal place of business in the State of Missouri.

3.     Individual Defendant Thomas C. Hullverson is a resident of the State of Arizona.  John E. Hullverson is a resident of the State of California.  Thomas M. Burke, Mark J. Becker and Stephen H. Ringkamp are residents of the State of Missouri.

4.     The amount in controversy in this action, exclusive of interest and costs, exceeds the sum of $75,000.00.

5.     Because complete diversity of citizenship exists between Plaintiffs and the Defendant, and because the amount in controversy in this action exceeds the sum of $75,000.00, jurisdiction is proper in this Court pursuant to 28 U.S.C., Section 1332, and 28 U.S.C., Section 1446.

6.     The Defendant Liberty Insurance Underwriters, Inc., (hereinafter "Liberty") issued a policy of Lawyers Professional Liability Insurance, Policy No. LPA300976-0111 with a policy period from October 26, 2011 through October 26, 2012.  A true and complete copy of said policy is attached hereto as Exhibit 1, and incorporated by reference as if fully set forth herein.

7.     The Hullverson Law Firm, P.C., is and was the named insured under said policy.

8.     On or about January 27, 2012, James E. Hullverson, Jr. filed a Complaint with attachments in the United States District Court for the Eastern District of Missouri which is now pending as Cause No. 4:12-CV-144(JAR).  In said Complaint, the Plaintiff has alleged, among other things, a claim for damages against each of the Defendants therein (Plaintiffs herein) based upon various and sundry activities related to advertising of The Hullverson Law Firm in the yellow pages, other phone books, and on the internet.

In addition to allegations related to the advertising activities of the Plaintiffs herein since James E. Hullverson, Jr., left the employ of The Hullverson Law Firm, P.C., the underlying Complaint included allegations of various ethical violations. The purported "ethical violations" in the underlying Complaint were stricken by the Honorable John A. Ross. Doc #36, 4:12-CV-144 (JAR). Thereafter, James E. Hullverson voluntarily dismissed the underlying Complaint without prejudice, Doc. #42, 4:12-CV-144 (JAR).

9.      On or about January 31, 2012, by correspondence delivered via Federal Express, the Plaintiffs herein notified the Defendant Liberty of the filing of said Complaint by James E. Hullverson, Jr. and requested that Defendant Liberty provide defense and indemnity pursuant to the aforementioned policy of professional liability insurance, LPA300976-0111. A copy of the aforementioned Complaint and its attachments by James E. Hullverson, Jr. was included with said correspondence.

10.      On or about February 3, 2012, via Federal Express and facsimile, correspondence was delivered to Defendant Liberty advising that the Summons and Complaint were served on The Hullverson Law Firm, Mark J. Becker, Thomas M. Burke, and Stephen H. Ringkamp. Copies of the Summons on each of the aforementioned, together with a copy of the Complaint and attachments were included with that correspondence. Again, request was made that Defendant Liberty take immediate steps to protect the interests of The Hullverson Law Firm and all named Defendants in Cause No. 4:12-CV-144(JAR), all under the terms of the aforementioned policy issued by the Defendant Liberty to The Hullverson Law Firm.

11.    On or about February 7, 2012, at approximately 3:30 p.m., Mr. Bob Tighe, on behalf of Defendant Liberty, orally advised Stephen H. Ringkamp by telephone that Defendant Liberty denied coverage under the aforementioned policy of professional liability insurance in connection with the Complaint 4:12-CV-144(JAR).  Prior to said denial of coverage, no one on behalf of Defendant Liberty had any contact with any of the Plaintiffs, and, to the knowledge of the Plaintiffs herein, conducted no investigation or research into the underlying Complaint.  Said Defendant Liberty continues to deny coverage to the Plaintiffs herein under the aforementioned policy of professional liability insurance.

12.    On or about February 8, 2012, Stephen H. Ringkamp, via facsimile transmission, forwarded correspondence to Mr. Bob Tighe at Defendant Liberty.  In said letter of February 8, 2012, Stephen H. Ringkamp detailed the policy provisions requiring coverage of the Plaintiffs herein under the aforementioned policy of professional liability insurance in connection with the Complaint No. 4:12-CV-144(JAR).  Demand was again made upon Defendant Liberty to defend and indemnify all Defendants therein.

13.    On or about February 10, 2012, via facsimile and certified mail, Defendant Liberty, through Mr. Robert J. Tighe, again denied coverage, and denied defense and indemnity, of any of the Plaintiffs herein.  Defendant Liberty has continued to deny coverage under the aforementioned policy of professional liability coverage.

14.    On or about February 15, 2012, via facsimile transmission, email, and regular mail to Mr. Robert Tighe at Defendant Liberty, Plaintiffs again demanded coverage, indemnity, and defense under the aforementioned policy of professional

4

liability coverage issued by Defendant Liberty. Said correspondence of February 15, 2012, contained extensive and detailed analysis and quotation of the policy provisions of said policy and again demanded defense, indemnity, and coverage as well as a reversal of the position taken by Defendant Liberty in its telecopy transmission of February 10, 2012.

15.     On February 15, 2012, Robert J. Tighe, on behalf of Defendant Liberty advised that the correspondence referenced in the preceding paragraph had been received and forwarded to Mr. Tighe's manager, Chuck Levine, for review.

16.     No response to the aforementioned letter from Stephen H. Ringkamp to Defendant Liberty dated February 15, 2012, was received until Thursday, March 29, 2012 via email from Robert Tighe on behalf of Defendant Liberty. Said email of March 29, 2012 transmitted a letter from Mr. Tighe on behalf of Defendant Liberty dated March 28, 2012. Said letter was also received by The Hullverson Law Firm via certified mail postmarked March 29, 2012. In said letter of March 28, 2012, from Mr. Tighe on behalf of Defendant Liberty, said Defendant "reiterated" its prior denial of coverage outlined in its letter dated February 10, 2012. Said letter of March 28, 2012 denied coverage on the grounds that the Complaint in No. 4:12-CV-144(JAR) did not seek "damages" as defined under the aforementioned professional liability policy, and claimed that the underlying Complaint did not arise out of "professional legal services" as defined by the policy. Said letter claimed that the "wrongful act" "still must arise out of the rendering or failing to render 'professional legal services'."

17.     On or about April 20, 2012, via Federal Express delivered April 23, 2012, Joan M. Lockwood, of the firm of Gray, Ritter & Graham, P.C. on behalf of Plaintiffs, forwarded a detailed analysis of the underlying facts and the policy provisions of the aforementioned policy of professional liability coverage to Mr. Robert Tighe at Defendant Liberty.  Demand was again made for defense and indemnity under said policy issued by Defendant Liberty.  No one on behalf of Defendant Liberty even acknowledged that letter of April 20, 2012, and did not respond thereto.

18.     On or about May 16, 2012, additional correspondence was transmitted to Mr. Robert Tighe at Defendant Liberty expressing displeasure that Ms. Lockwood had not received any response or acknowledgement of her prior letter of April 20, 2012. Thereafter, Defendant Liberty finally contacted Ms. Lockwood to advise that the matter was under review by coverage counsel.  Defendant Liberty through its coverage counsel finally responded to the request for indemnity on October 3, 2012.  Liberty concluded that the policy did not provide coverage in this claim and only agreed to provide a defense under reservation of rights from October 3, 2012 forward.  Liberty further refused to indemnify for past incurred attorneys' fees, costs and expenses.

19.     At all pertinent times, Defendant Liberty's policy No. LPA300976-0111 was in full force and effect and all premiums requested by Defendant Liberty had been paid.  The named insured under said policy is and was The Hullverson Law Firm, and additional insureds under the terms of said policy include all of the Plaintiffs herein.

20. The claim against the Plaintiffs herein contained in Complaint No. 4:12-CV-144(JAR) was first made against the Plaintiffs herein during the policy period and reported to Defendant Liberty in writing and Plaintiffs herein are in compliance with all conditions precedent of said policy of professional liability insurance.

21. The following quoted portions of the professional liability policy LPA300976-0111 issued by Defendant Liberty to The Hullverson Law Firm as the named insured reference the pagination utilized by Defendant Liberty in its Missouri Lawyers Professional Liability Policy, form No. LIU 1400-MO ED.12 08 (hereinafter referred to as "LIU 1400"). The aforementioned policy contains a coverage clause which provides in pertinent part as follows:

> "**We** agree to pay on **your** behalf all **damages** in excess of the deductible amount and up to the limits of liability stated in the Declarations that **you** become legally obligated to pay, provided such **damages**:
>
> 1. result from **claims**
>
>    a. first made against **you** during the **policy period** or any extended reporting period, if applicable, and
>
>    b. reported to **us** in writing; and
>
> 2. are caused by a **wrongful act** which takes place before or during the **policy period** but not before the Retroactive Date set forth in the Declarations, if any." LIU 1400, page 1 of 13.

The aforementioned claim by James E. Hullverson, Jr. constitutes a claim for damages made during the applicable policy period and contains reference to alleged wrongful acts (denied by the Plaintiffs herein) which allegedly took place before or during the policy

period and the declarations page applicable to Defendant Liberty's policy contains no retroactive date in the declarations page. Again, the Plaintiffs herein deny that any acts alleged by James E. Hullverson, Jr. in the underlying Complaint were in any way "wrongful".

22. LIU 1400, page 2 of 13, contains the definition of "claim" as follows:

"**Definitions**

Whenever the specially defined terms below are used in the policy they will be printed in uncapitalized, boldface type **thus**. . . .

2. **claim** means a demand received by **you** for money or services, including the service of suit or institution of arbitration proceedings against **you**, or a **disciplinary proceeding**."

With respect to each of the Plaintiffs herein (insureds under Defendant Liberty's policy), the underlying Complaint seeks damages against each of the insureds in Count I, paragraphs e, i and j; and respectively in Counts II, III, IV, V, and VI in their respective paragraphs f, j, and k. The underlying Complaint clearly constitutes a claim demanding that each of the insureds under Defendant Liberty's policy "pay money". LIU 1400, at page 2 of 13 contains the definition that the term "damages" means "monetary judgment or settlement . . . ." Thus, the underlying suit clearly constitutes a claim for damages. The fact that other remedies have been sought in the underlying Complaint does not make it any less a claim for damages. Any reliance by Defendant Liberty on the fact that other remedies may be sought in the underlying Complaint therefore is untenable and bespeaks the bad faith of Defendant Liberty in denying coverage.

23.     LIU 1400, page 2 and 3 of 13 provides as follows:

"8.     **personal injury** means . . .

c.     injury arising out of an offense occurring in the
course of the **named insured's** advertising
activities, including but not limited to
infringement of copyright, title slogan, patent,
trademark, trade dress, trade names, service mark
or service number."

Virtually all of the allegations in the underlying Complaint relate to the advertising

activities of the Plaintiffs herein over a course of roughly 14 years.  These alleged

advertising activities are variously characterized by the Plaintiff in the underlying

Complaint as alleged violations of the Lanham Act and infringements upon the

underlying Plaintiff's trademark, service mark, trade name, etc.  While Plaintiffs deny the

validity of any such characterization, the allegations are expressly and clearly within the

terms of Defendant Liberty's policy definition of personal injury as related to the **named**

**insured's** advertising activities.  Defendant Liberty, in its multiple denials of coverage,

has not referenced said policy provision and has not even attempted to explain why that

provision does not apply to provide coverage in this case.  Such failure to do so

constitutes another demonstration of the bad faith of Defendant Liberty in its denial of

coverage.

24.     LIU 1400, at page 3 of 13 provides a definition in pertinent part as follows:

"11.     **professional legal services** means legal services
and activities performed for others as:

a.     a lawyer;" . . . .

The word "others" is not defined by the policy. Any advertising activities performed or directed by an insured plainly "arise out of and relate to" activities performed for others. Advertising is an integral component of performing professional legal services. One does not cease being an attorney merely because of advertisement. To the contrary, an attorney advertises legal services precisely because of the status as an attorney. An attorney's or law firm's use of stationery, trade name, signage on a door, website design, and statements, slogans, telephone directories — all arise out of and relate to rendering legal services. "Arising out of" used in definition 8.c. (page 3 of 13 — LIU 1400) is broad language. Nothing in the policy limits the definition of "personal injury" or "professional legal services" to those involving a claim for professional negligence or malpractice in the context of an attorney/client relationship.

25.     As such, any attempt by Defendant Liberty purportedly denying coverage by reason of the absence of an attorney/client relationship between the Plaintiffs herein and James E. Hullverson, Jr. is untenable and without merit. Such attempts bespeak the bad faith of the Defendant Liberty in denying coverage under its policy when such coverage is expressly mandated.

26.     LIU 1400, page 3 of 13, provides a definition as follows:

> "15.     **wrongful act** means any actual or alleged act, error, omission or **personal injury** which arises out of the rendering or failure to render **professional legal services**."

This definition specifically and expressly includes in the definition of "personal injury" the provisions of the definition at LIU 8.c (page 3 of 13) related to injury arising out of

"advertising activities" <u>including but not limited to</u> (emphasis supplied) . . . infringement of . . . trademark . . . trade names . . ., etc.

27. LIU 1400, page 5 of 13, contains an exclusion as follows:

"**<u>Exclusions</u>** . . .

2. **<u>Fraudulent, Criminal, Malicious, Deliberately Wrongful Acts, or Omissions</u>**. This policy does not apply to any judgment or final adjudication based upon, arising out of or in any way related to any dishonest, fraudulent, criminal, malicious or deliberately wrongful acts or omissions committed by **you**. **We** will defend allegations of the foregoing acts or omissions until the time they are finally adjudicated or admitted by **you**."

This exclusion applies only where there has been a judgment or final adjudication or admission by the insureds. None of those events have taken place. This paragraph expressly obligates Defendant Liberty to defend any such allegations. Any reliance on this exclusion by Defendant Liberty is unsupported and evidences its bad faith in denying coverage under its policy.

28. LIU 1400, page 6 of 13, contains the following exclusion:

"5. **<u>Insured versus Insured</u>**. For the purpose of this sub-section, the term 'insured' shall mean 'you'. This policy does not apply to any **claim** made by one or more insured against another insured unless an attorney/client relationship exists."

The Plaintiff in the underlying Complaint, James E. Hullverson, Jr., was last a member of The Hullverson Law Firm over 14 years ago. During that time, James E. Hullverson, Jr. has not provided any professional legal services on behalf of The Hullverson Law Firm or any other Plaintiff. As such, he cannot conceivably be an "insured" as that term is

defined in paragraph 16 of the definitions section of LIU 1400, pages 3 and 4 of 13.

Therefore, James E. Hullverson, Jr., the Plaintiff in the underlying Complaint, is not and

cannot be a "named insured" or an "insured" under the policy. Any pretext by Defendant

Liberty of denial of coverage on the basis that the underlying Complaint is by an

"insured" against an "insured" is devoid of merit and additional evidence of the bad faith

of Defendant Liberty in its denial of coverage.

        29.     In pertinent part, LIU 1400, page 7 of 13 provides as follows:

> "**Defense of Claims**
>
> **We** have the right and duty to defend any **claim** against **you**
> including the appeal thereof seeking **damages** to which this
> insurance applies even if any of the allegations of the suit are
> groundless, false, or fraudulent." . . .

Under this "defense of claims" language of the aforementioned policy, Defendant Liberty

is obligated to defend the underlying claim since the underlying Complaint seeks

damages against the Plaintiffs herein. This provision expressly provides that Defendant

Liberty's duty to defend applies even if any of the allegations of the suit are groundless,

false or fraudulent. Defendant Liberty has failed and refused to do so despite the express

coverage and obligations imposed by the language of the policy itself. Such refusal and

failure again demonstrates the bad faith of the Defendant Liberty in its denial of

coverage.

        WHEREFORE, Plaintiffs pray judgment against the Defendant Liberty Insurance

Underwriters, Inc., and that this Court declare the rights of the parties under the

aforementioned policy of professional liability insurance, and enter judgment finding,

adjudicating, and declaring that Defendant Liberty has the duty to defend and indemnify each and all of the Plaintiffs herein in connection with the lawsuit, Complaint, and causes of action alleged in the underlying Complaint, No. 4:12-CV-144(JAR); that each of the Plaintiffs herein is an "insured" under Defendant Liberty's policy; that none of the provisions of the aforementioned policy exclude coverage for any of the Plaintiffs herein; for such other and further relief as this Court considers proper under the circumstances, and that costs expended herein be assessed against Defendant Liberty.

## COUNT II

## BREACH OF CONTRACT

Plaintiffs, for Count II of their additional cause of action against Defendant Liberty Insurance Underwriters, Inc., state as follows:

30.     All of the allegations of Count I of this First Amended Complaint are adopted, re-alleged, and incorporated by reference as if fully set forth herein.

31.     At all pertinent times, policy No. LPA300976-0111 was in full force and effect and all premiums requested by Liberty have been paid.

32.     The type and kind of claims involved in James E. Hullverson, Jr.'s lawsuit are of the type and kind covered by the aforementioned policy of professional liability insurance.

33.     Plaintiffs are in compliance with all conditions precedent of the policy of professional liability insurance, and Defendant Liberty has denied the claim nonetheless.

34.     Plaintiffs have made repeated demands upon Defendant Liberty to undertake the defense of Plaintiffs in defending claims covered by the policy and to indemnify Plaintiffs and pay any judgment rendered against Plaintiffs.

35.     By denying Plaintiffs' demand for defense and indemnification, Defendant Liberty breached the contract for professional liability insurance.

36.      As a result of Defendant Liberty's breach of contract, Plaintiffs suffered damages including but not limited to legal expenses in defending themselves against James E. Hullverson, Jr.'s lawsuit.

37.     In the event that damages are awarded against Plaintiffs in James E. Hullverson, Jr.'s lawsuit or that Plaintiffs are forced to pay defense fees, expenses, or costs, Plaintiffs, as a direct and proximate result of Defendant Liberty's breach in refusing to defend Plaintiffs and/or indemnify Plaintiffs, will be damaged by Defendant Liberty's breach for the full amount of any such damage award or payment and the costs and expenses, including attorneys' fees arising therefrom.

WHEREFORE, Plaintiffs pray for judgment on Count II for Breach of Contract against Defendant Liberty for such amount of money damages as is fair and reasonable under the circumstances, including payment of all attorneys' fees, costs, interest, and expenses incurred by each of the insureds herein in conducting the defense of the underlying Complaint, and for such other relief the Court deems just and proper.

# COUNT III

## VEXATIOUS REFUSAL TO PAY

Plaintiffs, for Count III of their additional cause of action against Defendant Liberty Insurance Underwriters, Inc., state as follows:

38. All of the allegations of Counts I and II of this First Amended Complaint are adopted, re-alleged, and incorporated by reference as if fully set forth herein.

39. To date, Plaintiffs have expended monies in defense of the underlying Complaint and will continue to do so in the future until such time as Defendant Liberty undertakes the defense, without reservation of rights, and full indemnification of the Plaintiffs herein.

40. Defendant Liberty's continued refusal to pay Plaintiffs amounts owed under the aforementioned policy of professional liability insurance is willful and without reasonable cause, and therefore constitutes vexatious refusal to pay under Section 375.296 of the Revised Statutes of the State of Missouri entitling Plaintiff to the vexatious refusal damages specified in Section 375.420 of the Revised Statutes of Missouri, including but not limited to attorneys' fees.

WHEREFORE, Plaintiffs pray for judgment on Count III for Vexatious Refusal to Pay against Defendant Liberty in the amount of twenty percent (20%) of the first fifteen hundred dollars ($1,500.00) of Plaintiffs' damages plus ten percent (10%) of the amount of Plaintiffs' damages in excess of fifteen hundred dollars ($1,500.00), for reasonable attorney's fees, for interest at a rate of nine percent (9%) per annum from the date of the

judgment, for their costs herein, and for such other relief as the Court deems just and proper.

## COUNT IV

### BAD FAITH FAILURE TO DEFEND AND INDEMNIFY

41. - 48.  This Count IV was dismissed by the Court per "Order of Partial Dismissal" Doc. #26, 7/22/13.

## COUNT V

### DISCIPLINARY DEFENSE COST REIMBURSEMENT

Plaintiffs, for their additional cause of action against the Defendant, for Disciplinary Defense Cost Reimbursement, state as follows:

49.     The allegations of Paragraphs 1-8, 19, and 20 of Count I of this First Amended Complaint are incorporated by reference as if fully set forth herein.

50.     The Complaint in 4:12-CV-00144-JAR, in addition to other allegations, included a variety of allegations purported to implicate the conducts of Liberty's insureds under Policy No. LPA300976-0111 as unethical (denied by Plaintiffs herein in all respects) in violation of the Missouri Rules of Professional Conduct as set forth in separate Counts against each such insured.  Additionally, in Paragraph 24, page 11, of the Complaint in 4:12-CV-00144-JAR, the Complaint therein invoked E.D. Mo. L.R. 83-12.02 and Rule IV, Section B of the Code of Professional Responsibility adopted by the U.S. District Court for the Eastern District of Missouri, and sought discipline of each insured by this Eastern District under those Rules up to and including disbarment.

51.     Said Complaint in 4:12-CV-00144-JAR was filed on or about January 27, 2012.  On or about February 2, 2012, The Complainant therein hand-delivered a copy of said Complaint to Mr. Alan D. Pratzel of the Office of Chief Disciplinary Counsel (OCDC) of Missouri, thereby initiating disciplinary proceedings against each insured under the Missouri Rules.

52.     Each insured, through counsel, defended the purported ethical violations in both 4:12-CV-00144-JAR and before the OCDC.

53.     Pursuant to the insureds' Motion to Dismiss and/or Strike in 4:12-CV-00144-JAR, Judge Ross, on December 3, 2012, Doc. #:36 therein, dismissed all ethical allegations therein pursuant to Memorandum and Order.

53.     The matter proceeded before the OCDC of Missouri where counsel defended the purported ethical violations.

54.     On or about December 28, 2012, the OCDC found no ethical violations by any of the insureds.  After appeal by the Complainant to the Advisory Committee of the Supreme Court of Missouri, that Advisory Committee determined that the OCDC findings were appropriate and declined further investigation, thus closing its files on May 20, 2013.

55.     In 4:12-CV-00144-JAR, the Complainant sought discipline against each insured separately in separate Counts, as follows:

        Count I - subparagraphs a, b, c

        Count II - subparagraphs a, b, h, and m

        Count III - subparagraphs a, b, and m

Counts IV, V and VI - subparagraphs a and b, respectively.

56.     The OCDC handled and treated the aforementioned ethical allegations as five separate files - one as to each insured.

57.     On or about July 11, 2013, after the conclusion of the OCDC proceedings as aforesaid, the insureds made demand upon Defendant, through counsel, under the following **Special Benefits** provisions relating to **Disciplinary Defense Cost Reimbursement** provisions contained in Liberty's Policy No. LPA300976-0111.  All pertinent supporting documentation, including confidential billing records and confidential materials from the OCDC proceedings (with OCDC permission, and to the extent available to the insureds), was supplied to Defendant.  Plaintiffs complied with all conditions precedent to such reimbursement.

58.     To date, Defendant has failed or refused to honor its obligations for **Disciplinary Defense Cost Reimbursement** as follows from Exhibit 1, Defendant's Missouri Lawyers Professional Liability Policy, form No. L1U 1400 - MO ED. 12.08 (hereinafter referred to as "LIU 1400):

**Definitions**

> 5.     **disciplinary proceeding** means a proceeding in which a complaint alleging a **wrongful act**, a violation of any disciplinary rule or other professional misconduct is brought before a tribunal or competent jurisdiction which shall make a determination subject to appeal or other review and/or a final and enforceable determination as to  whether such alleged professional misconduct is to be the subject of discipline.

> LIU 1400, page 2 of 13

**Special Benefits**

   2. **Disciplinary Proceeding Defense Cost Reimbursement**.
   If a **disciplinary proceeding** is brought against **you, we**
   will reimburse reasonable costs that **you** incur in the defense
   of such matters, provided **you** do not admit all or any part
   of the allegation.  Any reimbursement made pursuant to
   this sub-section will be in addition to the limits of liability
   set forth in the Declarations.

   The most **we** will reimburse for any one **disciplinary**
   **proceeding** is $25,000.  The most **we** will reimburse
   during the policy period or any extended reporting period,
   if applicable, for all **disciplinary proceedings** is $100,000
   in the aggregate.  **Our** determination as to the reasonableness
   of fees, costs and expenses will be conclusive on **you**.  **We**
   will waive **your** deductible with respect to reimbursements
   made under this sub-section.

                          LIU 1400, pages 4 & 5 of 13

   58.    Both the OCDC and the U.S. District Court in 4:12-CV-00144-JAR were

and are each a "tribunal of competent jurisdiction" before which "a complaint alleging" "a

violation of any disciplinary rule" was lodged against each "insured" herein.

   59.    Disciplinary defense costs in both proceedings have far exceeded said

policy's limit of liability of $100,000.00 "for all disciplinary proceedings" and have been

eminently reasonable in amount.

   60.    Defendant Liberty's continued delay and/or refusal to pay Plaintiffs in

accordance with its contractual obligations is willful and/or without reasonable cause, and

therefore constitutes vexatious conduct within the meaning of RSMo. §375.296 and

§375.420.

WHEREFORE, Plaintiffs pay judgment against Defendant Liberty Insurance Underwriters, Inc. in the amount of $100,000.00 pursuant to the aforementioned policy provisions, plus pre-judgment interest on a contractual liquidated amount at 9%, plus post-judgment interest pursuant to RSMo. §408.040, plus vexatious penalties, interest, and attorneys' fees as provided by RSMo. §375.296 and 375.420, for costs expended herein, and for such other relief as the Court considers proper under all the circumstances.

Respectfully submitted,

GRAY, RITTER & GRAHAM, P.C.


Date: 12/20/13

By:   /s/ Joan M. Lockwood
      Robert F. Ritter #20699MO
      Joan M. Lockwood #42883MO
      Attorneys for Plaintiffs
      701 Market Street, Suite 800
      St. Louis, MO 63101-1826
      (314) 241-5620
      Facsimile: (314) 241-4140
      Email:  rritter@grgpc.com
      Email:  jlockwood@grgpc.com

## CERTIFICATE OF SERVICE

I hereby certify that on December 20, 2013, the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon the following:

Mr. Russell F. Watters
Brown & James, P.C.
800 Market Street, Suite 1100
St. Louis, MO  63101
Email: rwatters@bjpc.com

Attorney for Defendant Liberty Insurance Underwriters, Inc.

/s/ Joan M. Lockwood
Joan M. Lockwood, 42883MO