**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| THE HULLVERSON LAW FIRM, P.C., et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 4:12-CV-1994 CAS |
| LIBERTY INSURANCE UNDERWRITERS, INC., | ) ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on plaintiffs Mark Becker, Thomas Burke, John E. Hullverson, Thomas C. Hullverson, Stephen H. Ringkamp, and The Hullverson Law Firm, P.C.'s ("plaintiffs") motion for summary judgment as to Count I of the amended complaint. Liberty Insurance Underwriters, Inc. ("Liberty") has filed a cross motion for summary judgment as to Count I of the amended complaint. The matters are fully briefed and ready for decision. For the following reasons, the Court will grant plaintiffs' motion and deny Liberty's motion.

**I.      Background**

This action arises out of a policy of lawyers professional liability insurance issued by Liberty to The Hullverson Law Firm, P.C. ("the Hullverson Law Firm"). Plaintiffs have brought a five-count complaint against Liberty. Count I seeks declaratory relief; Count II asserts a claim for breach of the insurance contract; Count III asserts a claim for vexatious refusal to pay; Count IV asserted a claim for bad faith failure to defend and indemnify;[1] and Count V asserts a claim for disciplinary defense cost reimbursement.

---

[1]Count IV was dismissed by the Court per the Order of Partial Dismissal dated July 22, 2013.

Underlying this professional liability insurance coverage action is an action filed by James E. Hullverson, Jr. ("James Hullverson") against plaintiffs in this Court, captioned <u>Hullverson v. Hullverson</u>, 4:12-CV-144 JAR (the "underlying suit"). In the underlying suit, James Hullverson alleged plaintiffs violated the Lanham Act and various Missouri Supreme Court Rules of Professional Conduct by presenting false and misleading advertising in phone directories, on the Internet, and on office signage. Allegedly, the Hullverson Law Firm advertised that John E. Hullverson and Thomas Hullverson were practicing attorneys at the firm many years after these two attorneys had left the state and were practicing elsewhere.[2] In fact, as alleged by James Hullverson, no attorney with the surname Hullverson has practiced law at the Hullverson Law Firm since at least 2000.

Nearby in Clayton, Missouri, however, James Hullverson maintains an active practice of law at his firm Hullverson & Hullverson. He alleges that his potential clients often confused the Hullverson Law Firm with his law firm, Hullverson & Hullverson. In fact, in the underlying complaint, James Hullverson alleged that potential clients who clicked on his name as a result of a Google search engine query would be routed to the Hullverson Law Firm's web page instead of the web page for his firm, Hullverson & Hullverson.

Plaintiffs denied liability in the underlying suit and requested that Liberty provide defense and indemnity pursuant to their policy of professional liability insurance. Liberty denied coverage in the underlying suit, and initially denied defense and indemnity to plaintiffs. Now both sides seek summary judgment on Count I, which seeks declaratory judgment regarding coverage.

---

[2]John E. Hullverson is the cousin of James Hullverson; Thomas Hullverson is the uncle of James Hullverson. <u>See</u> <u>Hullverson v. Hullverson</u>, 4:12-CV-144, Am. Compl. (Doc. 5) at ¶ 14.

## II.    Summary Judgment Standard

The standards applicable to summary judgment motions are well settled.  Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law."  See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Board of Educ., Island Trees v. Pico, 457 U.S. 853, 863 (1982).  "Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate."  Cearley v. General Am. Transp. Corp., 186 F.3d 887, 889 (8th Cir. 1999) (citing Crain v. Board of Police Comm'rs, 920 F.2d 1402, 1405-06 (8th Cir. 1990)).

Where parties file cross motions for summary judgment, each summary judgment motion must be evaluated independently to determine whether a genuine dispute of material fact exists and whether the movant is entitled to judgment as a matter of law.  Husinga v. Federal-Mogul Ignition Co., 519 F. Supp. 2d 929, 942 (S.D. Iowa 2007).  "[T]he filing of cross motions for summary judgment does not necessarily indicate that there is no dispute as to a material fact, or have the effect of submitting the cause to a plenary determination on the merits."  Wermager v. Cormorant Twp. Bd., 716 F.2d 1211, 1214 (8th Cir.1983).

With this standard in mind, the Court accepts the following facts as true for purposes of resolving the cross motions for summary judgment.

## III.    Facts

Liberty issued a policy of lawyers professional liability insurance, policy number LPA300976-0111, with a policy period from October 26, 2011 through October 26, 2012 (the "policy").  The Hullverson Law Firm was the named insured under the policy.  Additional insureds under the terms of the policy include all of the plaintiffs herein.

James Hullverson, plaintiff in the underlying suit, was licensed to practice law in September 1978, and was employed as a lawyer at the Hullverson Law Firm's predecessor firms prior to the formation of the Hullverson Law Firm. He was a shareholder and an employee of the Hullverson Law Firm until his departure in 1998. He performed professional legal services on the firm's behalf during this time period.

On January 27, 2012, James Hullverson filed a complaint alleging, among other things, a claim for damages against the firm and each of its attorneys based upon the advertising of the Hullverson Law Firm in phone books, on the Internet, and on office signage. The complaint was voluntarily dismissed without prejudice by James Hullverson.

On January 31, 2012, plaintiffs notified Liberty of James Hullverson's complaint and sought defense and indemnification pursuant to its lawyers professional liability policy. Plaintiffs requested Liberty take immediate steps to protect their interests under the terms of the policy. Liberty denied coverage to plaintiffs under the policy, and denied plaintiffs defense and indemnity. Liberty continued to deny coverage under the policy, and for many months plaintiffs made additional demands on Liberty. Eventually, Liberty agreed to provide a defense under reservation of rights from October 3, 2012 forward. Liberty refused to indemnify for past incurred attorneys' fees, costs and expenses related to the defense of the underlying suit.

At all relevant times, the policy was in full force and effect and all premiums had been paid. The claim against plaintiffs in the underlying suit was made during the policy period and reported to Liberty in writing. Plaintiffs are in compliance with all conditions precedent of the policy.

*The Policy Language*

The policy contains a coverage clause which provides in relevant part:

**We** agree to pay on **your** behalf all **damages** in excess of the deductible amount and up to the limits of liability stated in the Declarations that **you** become legally obligated to pay, provided such **damages**:

       1.      result from **claims**

            a.      first made against **you** during the **policy period** or any extended reporting period, if applicable, and

            b.      reported to **us** in writing; and

       2.      are caused by a **wrongful act** which takes place before or during the **policy period** but not before the Retroactive Date set forth in the Declarations, if any.

(LIU 1400—MO Ed. 12 08 at 1).

The policy contains the following definitions:

       2.      **claim** means a demand received by **you** for money or services, including the service of suit or institution of arbitration proceedings against **you**, or a **disciplinary proceeding**.

. . . .

       4.      **damages** means a monetary judgment or settlement, but does not include fines or statutory penalties, sanctions whether imposed by law or otherwise, any other amount awarded in any **disciplinary proceeding**, the return or restitution of legal fees, costs and expenses, punitive or exemplary damages, the multiplied portion of multiplied **damages**, amounts for which **you** are not financially liable or which are without legal recourse to **you** or matters which may be deemed uninsurable under applicable law.

. . . .

       6.      **named insured** means the person or entity designated in the Declarations and any **predecessor** of such entity.

. . . .

       8.      **personal injury** means

          . . .

            c.      injury arising out of an offense occurring in the course of the **named insured's** advertising activities, including but not limited to infringement of copyright, title[,] slogan, patent, trademark, trade dress, trade names, service mark or service number.

. . . .

      11.      **professional legal services** means legal services and activities performed for others as:

> a.   a lawyer;
>
> . . . .
>
> Services performed by **you** in a lawyer-client relationship on behalf of one or more clients shall be deemed for the purpose of this section to be professional services in **your** capacity as a lawyer, although such services could be performed wholly or in part by nonlawyers.
>
> . . . .
>
> 15.   **wrongful act** means any actual or alleged act, error, omission or **personal injury** which arises out of the rendering or failure to render **professional legal services**.
>
> 16.   **you** means:
>
> . . . .
>
> c.   if the **named insured** is a professional corporation, . . . such professional corporation . . . and each lawyer who is a shareholder or member thereof;
>
> d.   each lawyer employed by the **named insured**;
>
> e.   any person
>
> 1.   who qualified prior to the **policy period**, but who no longer qualified as of the first day of the **policy period**; or
>
> 2.   who during the **policy period** qualifies
>
> as an **insured** under b., c., or d., immediately above, but only to the extent such person performs or has performed **professional legal services** on behalf of the **named insured**;
>
> . . . .

(LIU 1400—MO Ed. 12 08 at 2-4).

The policy also included the following exclusion:

> 5.   **Insured versus Insured.**  For the purpose of this sub-section, the term "insured" shall mean "you."  This policy does not apply to any claim made by one or more insured against another insured unless an attorney/client relationship exists.

(LIU 1400—MO Ed. 12 08 at 6).

**IV.     Discussion**

Because jurisdiction of this case is based on diversity of citizenship, the Court applies the substantive law of Missouri, the forum state.  See Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1938).  Federal courts are "bound to accept the interpretation of [state] law by the highest court of the State." Hortonville Joint Sch. Dist. No. 1 v. Hortonville Educ. Ass'n, 426 U.S. 482, 488 (1976). If the Missouri Supreme Court has not yet addressed a particular issue, the Court "may consider relevant state precedent, analogous decisions, considered dicta, . . . and any other reliable data." Bass v. General Motors Corp., 150 F.3d 842, 847 (8th Cir. 1998) (quoted case omitted).

Under Missouri law, the interpretation of the meaning of an insurance policy is a question of law.  Capitol Indem. Corp. v. 1405 Assocs., Inc., 340 F.3d 547, 547 (8th Cir. 2003).  "In construing an insurance policy, the words must be given their plain meaning, consistent with the reasonable expectations, objectives, and intent of the parties." Standard Artificial Limb, Inc. v. Allianz Ins. Co., 895 S.W.2d 205, 209 (Mo. Ct. App. 1995).  "Where insurance policies are unambiguous, the rules of construction are inapplicable, and absent a public policy to the contrary, the policy will be enforced as written." Krombach v. Mayflower Ins. Co., 827 S.W.2d 208, 210 (Mo. 1992) (en banc) (citations omitted).  Nonetheless, "[i]nsurance policies are to be given a reasonable construction and interpreted so as to afford coverage rather than to defeat coverage." Nixon v. Life Investors Ins. Co. of Am., 675 S.W.2d 676, 679 (Mo. Ct. App. 1984).  An interpretation of insurance policy language which may render a portion of the policy illusory "should not be indulged in." Cano v. Travelers Ins. Co., 656 S.W.2d 266, 271 (Mo. 1983) (en banc).

Plaintiffs argue that James Hullverson's underlying claim arises from an advertising injury, which is covered under their professional liability policy.  Liberty argues that James Hullverson's underlying claim is not an advertising injury covered under the policy because it did not "aris[e] out of the rendering . . . of professional legal services," which is a requirement of coverage.

Alternatively, Liberty argues that the damages sought by James Hullverson are not damages as defined by the policy, and that the insured versus insured exclusion bars coverage.

    A.    <u>Does The Underlying Suit Seek Damages Caused by a "Wrongful Act"?</u>

The policy covers damages plaintiffs become legally obligated to pay that are caused by a "wrongful act" during the policy period. Wrongful act is defined as an act, error, omission or "personal injury" arising out of the rendering of "professional legal services." Personal injury is defined to include "injury arising out of an offense occurring in the course of the named insured's advertising activities, including but not limited to infringement of copyright, title[,] slogan, patent, trademark, trade dress, trade names, service mark or service number." Professional legal services are defined, in relevant part, as "legal services and activities performed for others as a lawyer."

The parties agree that James Hullverson's allegations in the underlying suit allege an advertising injury, which is included in the policy's definition of personal injury. Specifically, James Hullverson has alleged, among other things, violations of the Lanham Act. To be covered under the policy, however, Liberty argues that this personal injury must arise out of the rendering of professional legal services. The core dispute between the parties is whether James Hullverson's alleged advertising injury arises out of the rendering of professional legal services. Plaintiffs answer yes; Liberty answers no.

To support their position that advertising activities arise out of the rendering of legal services, plaintiffs state that advertising is an integral component of performing professional legal services. (Pls.' Mem. at 12). Plaintiffs point out that advertising is regulated by the Missouri Rules of Professional Conduct. "Clearly," they say, "advertising activities relating to the definition of 'personal injury' are performed as lawyers 'for others.'" <u>Id.</u> This conclusory statement is followed by another: "When any law firm advertises, that advertising 'activity' clearly 'arises out of,'

contemplates, and relates to past, present and future professional legal services for others." (Id.).

Liberty counters that advertising legal services is not the same as rendering legal services. Advertising is not performed for others, but for the benefit of the advertiser. Liberty states that under the unambiguous language of the policy, the advertising misconduct alleged in the underlying suit does not arise out of plaintiffs' legal services or activities performed for others as a lawyer. Thus, the allegations do not give rise to coverage under the policy or an obligation to defend or indemnify. (Def. Opp'n at 5).

The parties have not cited, and the Court has not found, any cases decided under Missouri law discussing whether a claim of advertising injury falls within the coverage of a lawyers professional liability insurance policy. The only case the Court has found involving the question whether a law firm's advertising could be construed as "professional legal services" was brought in Texas state court. In Atlantic Lloyd's Insurance Co. v. Susman Godfrey, LLP, 982 S.W.2d 472 (Tex. App. 1998), a Texas appellate court addressed the issue of whether a law firm's solicitation letter to a physician's former patient was a "professional service" within the meaning of the firm's commercial general liability policy, which excluded coverage for professional services. The court found that the solicitation letter was not a professional service. Although our case involves a lawyers professional liability policy that covers injuries arising out of the rendering of professional services, as opposed to a commercial general liability policy that excludes injuries arising out of professional services, the court's analysis in Atlantic Lloyd's is instructive.

The law firm at issue in Atlantic Lloyd's had successfully represented a patient of Dr. Likover in a medical malpractice suit. In an attempt to drum up more business, the firm sent an allegedly defamatory solicitation letter to another former patient of Dr. Likover, notifying the patient of the firm's successful lawsuit against the doctor. Dr. Likover sued the law firm for defamation,

and the firm tendered the suit to its commercial general liability insurer.  The firm's commercial general liability policy excluded coverage for incidents arising out of the rendering of professional services.  The insurer argued that the policy's professional services exclusion applied, and the policy did not cover the underlying advertising injury.  In deciding the issue, the court looked to the content of the letter, and found that the letter did not advise Dr. Likover's former patient, or offer any legal opinion.  Rather, the letter simply acknowledged that the recipient was a former patient and invited him to contact the law firm.  Id. at 477.  The court found that the firm's solicitation letter was not a professional service, and thus the exclusion was inapplicable.

Although cases interpreting professional liability coverage based on a lawyer's advertising practices are rare, other jurisdictions have considered professional liability coverage based on claims for damages arising out of a lawyer's billing practices.  In Colony Insurance Co. v. Fladseth, 2013 WL 1365988 (N.D. Cal. Apr. 3, 2013), the federal court sought to resolve whether an insurer had a duty to defend and indemnify a law firm in two ongoing state court actions alleging fraud and professional negligence against an attorney, Douglas Fladseth.  The state court actions arose out of, among other things, Mr. Fladseth's practice of calculating his contingency fee from his client's gross recovery, which violated California law.

In the declaratory judgment action filed in federal court, Mr. Fladseth's professional liability insurer argued the state court actions fell outside of the coverage provisions of the professional liability policy, because the claims were not based on "legal services" as defined in the policy.  The court found no ambiguity in the term "legal services" as defined in the policy.  Citing to cases interpreting both the phrase "legal services" and the phrase "professional services," the court sided with the insurer and held that the billing and fee-splitting acts at issue were administrative tasks and "not the usual and customary services of a lawyer."  Id. at *9; see also id. at **8-9 (collecting cases).  The court found that the underlying state court complaints were not based on "an act, error or

omission arising out of [Mr. Fladseth's] legal services rendered," and were therefore not covered under the policy.

Similarly, in <u>Reliance National Insurance Co. v. Sears, Roebuck & Co., Inc.</u>, 792 N.E.2d 145 (Mass. App. Ct. 2003), a lawyer fraudulently billed a former client for reviewing closed files. The client sued for an accounting and to recover for the fraudulent billing. The lawyer sought indemnity under his lawyers' professional liability insurance policy, which covered claims "caused by any act, error, or omission of the insured . . . which arise[s] out of the rendering or failure to render professional services for others in the insured's capacity as a lawyer." <u>Id.</u> at 147 (emphasis omitted). The Massachusetts state court found that the billing function of a lawyer is not a professional service: "Billing for legal services does not draw on special learning acquired through rigorous intellectual training." <u>Id.</u> at 148. The court distinguished generic business or commercial practices such as "the setting up and running of a business, including such tasks as securing office space, hiring staff, paying bills, and collecting on accounts receivable" from professional services such as "rendering of legal advice to and advocacy on behalf of clients for which the attorney is held to certain minimum professional and ethical standards." <u>Id.</u> at 148 (citations and quotations omitted). Although the court acknowledged that there are elements of experience and judgment in billing for legal services, it found billing is not a professional service and does not fall within the coverage of a professional liability insurance policy. <u>Id.</u> at 148; <u>see</u> <u>also</u> <u>Garland, Samuel & Loeb, P.C. v. American Safety Cas. Ins. Co.</u>, 651 S.E.2d 177, 179-80 (Ga. Ct. App. 2007) (collecting cases holding lawyers' professional liability insurance policies do not cover claims arising solely from billing and fee disputes); <u>see</u> <u>generally</u> <u>American Econ. Ins. Co. v. Jackson</u>, 476 F.3d 620, 625 (8th Cir. 2007) ("[T]he act or omission itself . . . and not the title or character of the party who performs or fails to perform the act to determine whether a particular service or treatment is professional in nature.").

Another analogous line of cases involves the question of professional liability coverage for insurance agents who send unsolicited faxed advertisements in violation of the Telephone Consumer Protection Act. For example, in BCS Insurance Co. v. Big Thyme Enterprises, Inc., 2013 WL 594858 (D.S.C. Feb. 14, 2013), the federal district court found that an insurance agency's unsolicited faxed advertising did not constitute professional services within the meaning of the agency's professional liability policy. Like plaintiffs in our case, the insureds in BCS argued that sending advertisements was more than merely an administrative act—the advertisements required the professional's approval to assure that they complied with laws and rules governing the profession. The court rejected the argument, however, stating that "sending unsolicited faxes to potential clients is neither the rendering nor the failure to render professional services under the language of the Policy." Id. at *3; see also Westport Ins. Corp. v. Jackson Nat'l Life Ins. Co., 900 N.E.2d 377, at **413-14 (Ill. App. Ct. 2008) (same) (citing Atlantic Lloyd's Ins., 982 S.W.2d at 476-77).

The specific acts challenged in the underlying case are the Hullverson Law Firm's inclusion of the names of John E. Hullverson and Thomas C. Hullverson in its advertisements, phone directories, office signage, and on the Internet. Additionally, the underlying suit alleged cyberpiracy by linking James Hullverson's name and the name of his firm to the website for the Hullverson Law Firm. Having considered the foregoing instructive cases, the Court finds the alleged injuries in the underlying suit do not arise out of the rendering or failure to render professional legal services.

Similar to the billing function of a law firm, the advertising function of a law firm is incidental to the firm's business as a law firm. The lawyers professional liability policy at issue defines professional legal services as "legal services and activities performed for others as lawyers." The policy is unambiguous. The firm's advertisements, listings in phone directories, office signage, and Internet listings are neither legal services nor activities performed for others as lawyers. The

listing of attorneys' names on firm advertising and signage does not draw on the specialized knowledge or training acquired by lawyers. The advertising was designed to acquire new clients and business, not to render professional legal services. It does not advise clients or the general public, and offers no legal opinions. As to potential clients, the advertising and signage merely invites the them to contact the law firm. As to current clients, it merely provides the firm's and its attorneys' contact information.

The Court rejects plaintiffs' argument that because lawyer advertisements are subject to outside professional regulations, the advertisements necessarily arise out of the rendering of professional legal services. Just as a lawyer's billing and fees are regulated by the rules of professional conduct, a lawyer's advertising is regulated by the rules of professional conduct. Compare Mo. R. Prof. Conduct 4-1.5 (governing fees and fee disputes) with Mo. R. Prof. Conduct 4-7.2 to 4-7.5 (governing advertising). Although the professional rules of conduct govern certain aspects of a lawyer's business, this alone does not change the character of what is otherwise a generic business practice into a professional legal service.

Based on the unambiguous and plain language of plaintiffs' policy, the advertising injury at issue in the underlying complaint did not arise out of the rendering or failure to render professional legal services.

  B. Is Coverage for the Firm's Advertising Activity, Specifically Infringement of Trademark, Trade Dress, and Trade Names, Illusory?

The coverage analysis does not end with the decision that the allegations of advertising injury in the underlying case do not arise out of the rendering or failure to render professional legal services. Well-settled Missouri law requires a court to evaluate the policy as a whole, and not to interpret policy provisions in isolation. See Seeck v. Geico Gen. Ins. Co., 212 S.W.3d 129, 133 (Mo. 2007) (en banc) (rejecting insurer's argument that the court should hold a policy definition

unambiguous and not reach issue of whether policy as a whole was ambiguous). The Court is mindful that it should not adopt an interpretation neutralizing a policy provision if another interpretation gives it effect. Sommer v. New Amsterdam Cas. Co., 171 F. Supp. 84 (E.D. Mo. 1959). "Missouri law is well-settled that where one provision of a policy appears to grant coverage and another to take it away, an ambiguity exists that will be resolved in favor of coverage." Rice v. Shelter Mut. Ins. Co., 301 S.W.3d 43, 48 (Mo. 2009) (en banc) (quoting Jones v. Mid-Century Ins. Co., 287 S.W.3d 687, 689 (Mo. 2009) (en banc)).

In this case, the policy language includes advertising injury in its definition of personal injury, and specifically includes any injury arising out of the firm's infringement of trademarks and trade names. The policy then eliminates coverage for advertising injury by defining wrongful act to include personal injury, but only to the extent such personal injury arises out of rendering professional legal services. Because the Court has concluded that a law firm's advertising will never arise out of the rendering of professional legal services (see Part IV.A., supra), the policy's definition of wrongful act excludes injury arising out of the law firm's advertising. Thus, the policy's definition of personal injury appears to provide coverage for the Hullverson Law Firm's advertising activities, but the definition of wrongful act then takes that coverage away.

Liberty has provided no reasonable alternative interpretation which accounts for the language contained in the policy. In the reply brief in support of its cross motion for summary judgment, Liberty posits a hypothetical in which advertising would arise out of the rendering of professional legal services: If an insured firm advertised expertise in bankruptcy, and was then sued by a client who had used the firm's bankruptcy services to its detriment, the allegations would relate to an offense occurring in the course of the firm's advertising—misrepresentation as to the firm's expertise—which arises out of the firm's rendering of legal services. See Def.'s Reply (Doc. 60) at 5 n.2.

It is not clear that Liberty's example illustrates an advertising injury arising out of the rendering of professional legal services. Rather, this example seems to highlight the ambiguity of the policy as it relates to advertising injury. The alleged misrepresentation occurred in the advertising, wholly apart from the rendering of professional legal services. The damages sustained by the client's reliance on the advertising arose out of the rendering of professional legal services. As the Court sees it, the client's "personal injury" in Liberty's hypothetical did not arise out of the rendering of professional legal services.

Even assuming it is possible to state a hypothetical advertising injury that arose out of the rendering of professional legal services, the policy expressly includes injuries of infringement of trademark, trade dress, and trade name. Liberty has offered no interpretation of the policy that would provide any coverage for infringement of trademark, trade dress, or trade name in the named insured's advertising. These causes of action, although expressly included in the policy's definition of personal injury, cannot arise out of the rendering of professional legal services.

Under Missouri law, the policy as a whole is therefore ambiguous and the ambiguity must be resolved in favor of coverage for the insured. Krombach, 827 S.W.2d at 210-11. "A construction which may render a portion of the policy illusory should not be indulged in." Cano, 656 S.W.2d at 271. Reading this policy as a whole, the Court finds that the definition of "personal injury," which includes injury in the course of the named insured's advertising activities and specifically infringement of trademark, trade dress, and trade names, is rendered illusory by the policy's requirement that the personal injury must arise out of the rendering of professional legal services. An ambiguity exists, and this ambiguity will be resolved in favor of coverage. Rice, 301 S.W.3d at 48.

C.     Damages

Liberty argues that the underlying suit sought equitable relief, the return or restitution of legal fees, and statutory damages including treble damages. Liberty asserts that none of these damages constitutes "damages" as defined under the policy, and therefore the policy does not cover the underlying suit.

In the underlying suit, James Hullverson sought against each defendant as follows:

> (e)      that defendant account for and pay as damages to the plaintiff all profits and advantages gained from his Rule violation and his Lanham Act violation;
> . . . .
>
> (i)      that defendant pay the plaintiff interest, costs, and reasonable attorney fees;
>
> (j)      the court award up to treble damages to plaintiff against defendant[.]

Hullverson v. Hullverson, 4:12-CV-144 JAR, Am. Compl. (Doc. 5-1) at 47.

Under the policy, Liberty defines damages as follows:

> 4.     **damages** means a monetary judgment or settlement, but does not include fines or statutory penalties, sanctions whether imposed by law or otherwise, any other amount awarded in any **disciplinary proceeding**, the return or restitution of legal fees, costs and expenses, punitive or exemplary damages, the multiplied portion of multiplied **damages**, amounts for which **you** are not financially liable or which are without legal recourse to **you** or matters which may be deemed uninsurable under applicable law.

The Court finds that some of the requests for damages in the underlying suit fall within the policy's definition of damages. The prayer for relief expressly seeks "all profits and advantages gained from [plaintiffs'] . . . Lanham Act violation." This is a claim for all damages James Hullverson might recover under the Lanham Act, which necessarily includes monetary relief and compensatory damages. The Lanham Act states that a successful plaintiff "shall be entitled . . . to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117.

Because Liberty's insured is a law firm, Liberty argues that the insured's "profits" are excluded from damages because they are actually "the return or restitution of legal fees." The policy

does not define the term "return or restitution of legal fees." When a term "is not defined in the policy, . . . it is necessary to use the ordinary meaning of the word, as set forth in the dictionary." Schmitz v. Great Am. Assurance Co., 337 S.W.3d 700, 708 (Mo. 2011). To return is "to revert to a former owner"; restitution is the "act of restoring to the proper owner something taken away." Webster's New Riverside University Dictionary 1002, 1004 (1988). Therefore, the return or restitution of legal fees presupposes that the legal fees came from the injured party. That is not the case here. James Hullverson is seeking all profits and advantages gained by the Hullverson Law Firm and its attorneys from using the Hullverson names in its advertising. James Hullverson is not seeking the return or restitution of any fees he paid the firm.

While some of the damages sought by James Hullverson are excluded by the policy, for example, his costs and attorneys' fees incurred in bringing suit and treble damages, not all of the damages sought are excluded. Plaintiffs have established that the underlying action seeks damages so as to trigger coverage under the policy.

D.    Insured Versus Insured Exclusion

Finally, Liberty asserts that the policy excludes coverage of the underlying claim based on the insured versus insured exclusion, because James Hullverson is an insured under the terms of the policy. Under Missouri law, the burden of showing that an exclusion to coverage applies is on the insurer. Burns v. Smith, 303 S.W.3d 505, 510 (Mo. 2010) (en banc). "Exceptions and limitations contained in insurance policies should be construed strictly against the insurer." Standard Artificial Limb, Inc., 895 S.W.2d at 209. "When an insurance company seeks to escape coverage based on policy exclusions, the burden is on it to establish the applicability of the exclusions." Superior Equip. Co., Inc. v. Maryland Cas. Co., 986 S.W.2d 477, 482 (Mo. Ct. App. 1998).

The policy's insured versus insured exclusion states as follows:

**Insured versus Insured.** For the purpose of this sub-section, the term "insured" shall mean "you." This policy does not apply to any **claim** made by one or more insured against another insured unless an attorney/client relationship exists.

(LIU 1400 — MO Ed. 12 08 at 5).

The policy defines the term "you" as follows:

**you** means:

    . . . .

    b.    if the **named insured** is a partnership or limited liability partnership, such partnership or limited liability partnership and each lawyer who is a partner thereof including any incorporated partner and each shareholder of any such incorporated partner;

    c.    if the **named insured** is a professional corporation, . . . such professional corporation . . . and each lawyer who is a shareholder of member thereof;

    d.    each lawyer employed by the **named insured**;

    e.    any person

        1.  who qualified prior to the **policy period,** but who no longer qualified as of the first day of the **policy period**; or

        2.  who during the **policy period** qualifies

    as an **insured** under b., c., or d., immediately above, but only to the extent such person performs or has performed **professional legal services** on behalf of the **named insured**;

(<u>Id.</u> at 4).

The insured versus insured exclusion is commonly found in director and officer liability insurance policies. See <u>Bodewes v. Ulico Cas. Co.</u>, 336 F. Supp. 2d 263, 272 (W.D.N.Y. 2004). "The purpose underlying the exclusion is to prevent collusion, 'such as suits in which a corporation sues its officers and directors in an effort to recoup the consequences of their business mistakes . .

. , thus turning liability insurance into business-loss insurance . . . .'"  Id. (quoting Level 3 Commc'ns, Inc. v. Federal Ins. Co., 168 F.3d 956, 958 (7th Cir. 1999)).

Contrary to Liberty's position, the Court finds that James Hullverson does not fall within the definition of "you" in the policy. James Hullverson has not been a lawyer, shareholder or member of the Hullverson Law Firm since 1998. Because he is not currently a lawyer, shareholder or member of the firm, he does not qualify under subparagraphs (b), (c), or (d) of the definition of "you." Subparagraph (e) of the definition of "you" includes James Hullverson because prior to the policy period (i.e., prior to October 26, 2011), he qualified as a lawyer, shareholder, and employee of the firm, "but only to the extent that [he] . . . has performed professional legal services on behalf of the named insured."  LIU 1400 — MO Ed. 12 08 at 4. James Hullverson is therefore included in the definition of "you" only to the extent that he performed professional legal services on behalf of the named insured. The underlying suit does not relate to or arise out of any professional legal services James Hullverson performed on behalf of the Hullverson Law Firm, so James Hullverson does not fit into subsection (e) of the definition of "you." Because James Hullverson does not fall within the definition of "you" for purposes of the underlying suit, he does not fall within the definition of an "insured" for purposes of the insured versus insured exclusion.

The Court agrees with plaintiffs that the purpose of the "but only to the extent . . ." language of subsection (e) is to ensure that both the lawyer and the firm are insured under the policy in the event allegations are made against the insured firm that arise out of a previously employed lawyer's rendition of professional legal services on behalf of the firm.  See Pls. Reply at 12-13 (Doc. 58). The policy's insured versus insured exclusion does not eliminate coverage for an action, in this case a trademark action, against the named insured by a lawyer it previously employed.

Liberty has not met its burden of showing the exclusion to coverage applies. Construed strictly against the insurer, the exclusion does not bar coverage for the underlying suit.

**V.     Conclusion**

James Hullverson's claims in the underlying suit trigger coverage under plaintiffs' policy of lawyers professional liability insurance.  The alleged violations of the Lanham Act fall within the policy definition of personal injury.  To the extent the definition of "wrongful act" excludes the advertising injury expressly defined in subsection (c) of personal injury, the Court concludes the policy coverage is illusory.  The Court further concludes that the underlying suit seeks damages as defined by the policy, and the insured versus insured exclusion does not bar coverage.  Plaintiffs are entitled to summary judgment on Count I of the amended complaint.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiffs' motion for summary judgment against defendant Liberty Insurance Underwriters, Inc. on Count I is **GRANTED**. [Doc. 48]

**IT IS FURTHER ORDERED** that defendant Liberty Insurance Underwriters, Inc.'s motion for summary judgment as to Count I of plaintiffs' complaint is **DENIED**. [Doc. 51]

A declaratory judgment will accompany this memorandum and order.

_____
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this <u>11th</u> day of June, 2014.