UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| THE HULLVERSON LAW FIRM, P.C., et al., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No. 4:12-CV-1994 CAS ) |
| LIBERTY INSURANCE UNDERWRITERS, INC., | ) ) ) ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on the plaintiffs Mark Becker, Thomas Burke, John E. Hullverson, Thomas C. Hullverson, Stephen H. Ringkamp, and The Hullverson Law Firm, P.C.'s ("plaintiffs") motion for summary judgment as to Count V of the amended complaint. Liberty Insurance Underwriters, Inc. ("Liberty") has filed a cross motion for summary judgment as to Count V. The matter is fully briefed and ready for decision. For the following reasons, the Court will deny plaintiffs' motion and grant Liberty's motion.

**I.     Background**

This action arises out of a policy of lawyers professional liability insurance issued by Liberty to The Hullverson Law Firm, P.C. ("the Hullverson Law Firm"). Initially plaintiffs brought a four-count complaint against Liberty. Count I sought declaratory relief; Count II asserted a claim for breach of the insurance contract; Count III asserted a claim for vexatious refusal to pay; and Count IV asserted a claim for bad faith failure to defend and indemnify.[1]  Plaintiffs filed their amended

---

[1]Count IV was dismissed by the Court per the Order of Partial Dismissal dated July 22, 2013.

complaint on January 16, 2014, adding Count V, which seeks coverage for plaintiffs' costs in defending themselves in disciplinary proceedings.

Underlying this professional liability insurance coverage action is an action filed by James E. Hullverson, Jr. ("James Hullverson") against plaintiffs in this Court, captioned <u>Hullverson v. Hullverson</u>, 4:12-CV-144 JAR (the "underlying suit"). In the underlying suit, James Hullverson alleged plaintiffs violated the Lanham Act and various Missouri Supreme Court Rules of Professional Conduct by presenting false and misleading advertising in phone directories, on the Internet, and on office signage. In addition to filing suit, James Hullverson also delivered a copy of the complaint to Mr. Alan D. Pratzel of the Missouri Office of Chief Disciplinary Counsel ("OCDC"). The OCDC initiated disciplinary proceedings against the insureds under the Missouri Rules of Professional Conduct.

Returning to the instant case, on June 11, 2014, the Court granted plaintiffs' motion for summary judgment on Count I for declaratory relief, declaring Liberty has a duty under the lawyers professional liability policy to defend and indemnify plaintiffs in the underlying suit. Now the parties have filed cross motions for summary judgment on Count V, which seeks coverage for disciplinary proceeding defense costs under the provision of the policy relating to Disciplinary Proceeding Defense Cost Reimbursement. Liberty has already reimbursed plaintiffs the $25,000 policy limit for defense costs for "any one disciplinary proceeding," but plaintiffs seek the $100,000 aggregate limit for defense costs for multiple disciplinary proceedings.

## II. Summary Judgment Standard

The standards applicable to summary judgment motions are well settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." See <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986);

Board of Educ., Island Trees v. Pico, 457 U.S. 853, 863 (1982). "Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate." Cearley v. General Am. Transp. Corp., 186 F.3d 887, 889 (8th Cir. 1999) (citing Crain v. Board of Police Comm'rs, 920 F.2d 1402, 1405-06 (8th Cir. 1990)).

Where parties file cross motions for summary judgment, each summary judgment motion must be evaluated independently to determine whether a genuine dispute of material fact exists and whether the movant is entitled to judgment as a matter of law. Husinga v. Federal-Mogul Ignition Co., 519 F. Supp. 2d 929, 942 (S.D. Iowa 2007). "[T]he filing of cross motions for summary judgment does not necessarily indicate that there is no dispute as to a material fact, or have the effect of submitting the cause to a plenary determination on the merits." Wermager v. Cormorant Twp. Bd., 716 F.2d 1211, 1214 (8th Cir.1983).

With this standard in mind, the Court accepts the following facts as true for purposes of resolving the cross motions for summary judgment.

### III. Facts

Liberty issued a policy of lawyers professional liability insurance, policy number LPA300976-0111, with a policy period from October 26, 2011 through October 26, 2012 (the "policy"). The Hullverson Law Firm was the named insured under the policy. Additional insureds under the terms of the policy include all of the plaintiffs herein.

On January 27, 2012, James Hullverson filed a complaint alleging, among other things, a claim for damages against the firm and several of its individual attorneys based upon the allegedly false advertising of the Hullverson Law Firm in phone books, on the Internet, and on office signage. The complaint included separate counts against each plaintiff for violations of the Missouri Rules of Professional Conduct. The complaint invoked Eastern District Local Rule 83-12.02 and Rule IV, Section B of the Code of Professional Responsibility adopted by the U.S. District Court for the

Eastern District of Missouri, and sought discipline of each insured by this Court under those Rules up to and including disbarment.

On February 2, 2012, James Hullverson delivered a copy of the complaint to the OCDC, thereby initiating disciplinary proceedings against each insured under the Missouri Rules of Professional Conduct. The OCDC assigned each insured a separate file number, docketed as follows: John E. Hullverson, File No. 12-267; Thomas C. Hullverson, File No. 12-268; Thomas M. Burke, File No. 12-266; Mark J. Becker, File No. 12-265; and Stephen H. Ringkamp, File No. 12-269.

Plaintiffs hired the law firm Husch Blackwell to defend them in the underlying action and to defend them before the OCDC. In the underlying suit, pursuant to the insureds' motion to dismiss or strike, Judge John A. Ross dismissed the ethical allegations concerning the purported violations fo the Missouri Rules of Professional Conduct. He held the Missouri Rules of Professional Conduct were insufficient to form the basis of a civil cause of action, and noted that the OCDC was investigating the allegations. Less than two weeks later, the underlying complaint was voluntarily dismissed without prejudice by James Hullverson.

The matter proceeded before the OCDC, and on December 28, 2012, the OCDC found no ethical violations by any of the insureds. After appeal by James Hullverson to the Advisory Committee of the Supreme Court of Missouri, the Advisory Committee determined that the OCDC findings were appropriate and declined further investigation. The Advisory Committee closed its investigation file on May 20, 2013.

On July 11, 2013, plaintiffs made demand upon Liberty under the Special Benefits provisions relating to Disciplinary Defense Cost Reimbursement. The defense of the ethical allegations in the underlying suit and in the OCDC proceedings exceeded the policy's aggregate limit of liability of $100,000 "for all disciplinary proceedings." On January 10, 2014, Liberty issued

its check to plaintiffs in the amount of $25,000 for the amount it conceded it owed pursuant to the policy's Special Benefits Provision. Liberty denies payment beyond the $25,000 limit.

On January 16, 2014, plaintiffs file a first amended complaint, alleging Count V for reimbursement of defense costs up to the $100,000 aggregate limit for multiple disciplinary proceedings under the policy.

*The Policy Language*

The policy contains a "Special Benefits" provision relating to "Disciplinary Proceeding Defense Cost Reimbursement":

> **Special Benefits**
>
> . . .
>
> 2. **Disciplinary Proceeding Defense Cost Reimbursement.** If a **disciplinary proceeding** is brought against **you, we** will reimburse reasonable costs that **you** incur in the defense of such matters, provided **you** do not admit all or any part of the allegation. Any reimbursement made pursuant to this sub-section will be in addition to the limits of liability set forth in the Declarations.
>
> The most **we** will reimburse for any one **disciplinary proceeding** is $25,000. The most **we** will reimburse during the policy period or any extended reporting period, if applicable, for all **disciplinary proceedings** is $100,000 in the aggregate. **Our** determination as to the reasonableness of fees, costs and expenses will be conclusive on **you.**
>
> **We** will waive **your** deductible with respect to reimbursements made under this sub-section.

LIU 1400 — MO Ed. 12 08 at 4-5.

The policy defines the words "claim," "disciplinary proceeding," and "you" as follows:

> **Definitions**
>
> . . .
>
> 2. **claim** means a demand received by **you** for money or services, including the service of suit or institution of arbitration proceedings against **you**, or a **disciplinary proceeding**.

> . . .
>
> 5.  **disciplinary proceeding** means a proceeding in which a complaint alleging a **wrongful act**, a violation of any disciplinary rule or other professional misconduct is brought before a tribunal of competent jurisdiction which shall make a determination subject to appeal or other review and/or a final and enforceable determination as to whether such alleged professional misconduct is to be the subject of discipline.
>
> . . .
>
> 16.  **you** means:
> . . .
> c.  if the **named insured** is a professional corporation, limited liability corporation or professional association, such professional corporation, limited liability corporation or professional association and each lawyer who is a shareholder or member thereof;
>
> d.  each lawyer employed by the **named insured**;
> . . .

LIU 1400 — MO Ed. 12 08 at 2-4.

The policy contains the following "Limits of Liability & Deductible":

> **Limits of Liability & Deductible**
>
> . . .
>
> 6.  **Multiple Insureds, Claims and Claimants.** Neither the making of a **claim** against more than one of **you** nor the making of **claims** by more than one person or entity shall operate to increase **our** limits of liability. **Claims** alleging, based upon, arising out of or attributable to the same or related **wrongful acts** shall be treated as a single **claim** regardless of whether made against one or more than one of **you**. All such **claims**, whenever made, shall be considered first made during the **policy period** or any extended reporting period in which the earliest **claim** arising out of such **wrongful acts** was first made, and all such **claims** shall be subject to the same limits of liability.

LIU 1400 — MO Ed. 12 08 at 7 ("MICC").

**IV. Discussion**

Because jurisdiction of this case is based on diversity of citizenship, the Court applies the substantive law of Missouri, the forum state. See Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1938). Federal courts are "bound to accept the interpretation of [state] law by the highest court of the State." Hortonville Joint Sch. Dist. No. 1 v. Hortonville Educ. Ass'n, 426 U.S. 482, 488 (1976). If the Missouri Supreme Court has not yet addressed a particular issue, the Court "may consider relevant state precedent, analogous decisions, considered dicta, . . . and any other reliable data." Bass v. General Motors Corp., 150 F.3d 842, 847 (8th Cir. 1998) (quoted case omitted).

Under Missouri law, the interpretation of the meaning of an insurance policy is a question of law. Capitol Indem. Corp. v. 1405 Assocs., Inc., 340 F.3d 547, 547 (8th Cir. 2003). "In construing an insurance policy, the words must be given their plain meaning, consistent with the reasonable expectations, objectives, and intent of the parties." Standard Artificial Limb, Inc. v. Allianz Ins. Co., 895 S.W.2d 205, 209 (Mo. Ct. App. 1995). "Where insurance policies are unambiguous, the rules of construction are inapplicable, and absent a public policy to the contrary, the policy will be enforced as written." Krombach v. Mayflower Ins. Co., 827 S.W.2d 208, 210 (Mo. 1992) (en banc) (citations omitted). Nonetheless, "[i]nsurance policies are to be given a reasonable construction and interpreted so as to afford coverage rather than to defeat coverage." Nixon v. Life Investors Ins. Co. of Am., 675 S.W.2d 676, 679 (Mo. Ct. App. 1984).

The parties' cross motions for summary judgment on Count V present two main questions: (1) was the underlying suit a "disciplinary proceeding" as defined by the policy; and (2) are plaintiffs entitled to reimbursement up to the $100,000 aggregate limit for multiple disciplinary proceedings, or only the $25,000 limit for "any one disciplinary proceeding"?

    A.    <u>Was the Underlying Suit in the United States District Court for the Eastern District of Missouri a "Disciplinary Proceeding"?</u>

Plaintiffs argue that separate disciplinary proceedings were brought in the United States District Court and the OCDC. By characterizing both actions as "disciplinary proceedings," plaintiffs seek reimbursement for defense costs in the both venues under the policy's Special Benefits provision for Disciplinary Proceeding Defense Cost Reimbursement.

Liberty argues, however, that the underlying suit in this Court was not a "disciplinary proceeding" within the meaning of the policy, and cannot give rise to coverage under the provision for Disciplinary Proceeding Defense Cost Reimbursement.[2] Liberty argues that a disciplinary proceeding is a species of a claim. By policy definition, a claim includes "the service of suit . . . **or** a disciplinary proceeding." LIU 1400 — MO Ed. 12 08 at 2 (emphasis added). Because the policy distinguishes between the service of a suit and a disciplinary proceeding, Liberty argues that the underlying suit is not a disciplinary proceeding. Only the proceeding before the OCDC is properly considered a disciplinary proceeding. Moreover, the underlying suit does not fit within the policy definition of a "disciplinary proceeding" because Judge Ross, who presided over the underlying suit, did not make a "determination . . . as to whether such alleged professional misconduct is to be the subject of discipline." Id.

The Court agrees with Liberty that the underlying suit brought in this Court was not a "disciplinary proceeding" as defined by the policy. The policy definition of "claim" distinguishes among a lawsuit, an arbitration proceeding, and a disciplinary proceeding. Each of the three constitutes a claim. "**[C]laim** means a demand received by **you** for money or services, including the service of suit or institution of arbitration proceedings against **you**, or a **disciplinary proceeding.**" LIU 1400 — MO Ed. 12 08 at 2. By making the distinction between these types of

---

[2]Liberty concedes that the proceeding before the OCDC was a disciplinary proceeding.

claims and using the disjunctive "or," the policy recognizes that a lawsuit is not an arbitration proceeding is not a disciplinary proceeding.

Furthermore, the definition of "disciplinary proceeding" provides that such a proceeding must be brought "before a tribunal of competent jurisdiction which shall make a determination . . . as to whether such alleged professional misconduct is to be the subject of discipline." Id. Although plaintiffs attempt to argue that this Court is such a tribunal of competent jurisdiction for the filing of ethical violations (see Pls.' Mem. at 8), clearly their counsel in the underlying suit and OCDC proceeding did not agree. See Pls.' Mem. at Ex. 5. As plaintiffs' counsel stated succinctly, and near perfectly, in a letter to the OCDC:

> Beyond the lack of merit to the allegations [in the underlying suit], however, all of this is improper procedurally. Rule X was clearly promulgated to empower a District Judge to appoint a disciplinary investigator, and refer a matter to that investigator, when the alleged ethical misconduct arises out of an ongoing Federal lawsuit. In this case, of course, we have the opposite—we have a newly-filed Federal lawsuit in which the Plaintiff claims that a cause of action arises out of alleged ethical violations. Although Rule X contains no such express jurisdictional limitation, to read it otherwise would mean that any complaining party can avoid the disciplinary process contemplated by Missouri Supreme Court Rule 5.08 simply by couching his or her ethical complaint against a Missouri lawyer as a Federal Complaint and filing it in the United States District Court.

Id.

Beyond the fact that it is doubtful that this Court is a tribunal of competent jurisdiction to resolve violations of Missouri Rules of Professional Conduct, the Court made no such determination in the underlying suit. The definition of "disciplinary proceeding" requires that the tribunal "shall make a determination . . . as to whether such alleged professional misconduct is to be the subject of discipline." LIU 1400 — MO Ed. 12 08 at 2. In the underlying suit, defendants (plaintiffs here) moved to dismiss or strike the alleged violations of the Missouri Rules of Professional Conduct, stating that the Rules cannot form the basis of a civil cause of action. (Underlying Suit, Doc. 36). Judge Ross agreed, and dismissed James Hullverson's allegations concerning the purported

violations of the Missouri Rules of Professional Conduct. Judge Ross held that plaintiff's reference to the Rules was insufficient to form the basis of a civil cause of action. He also noted that James Hullverson had filed a copy of the complaint with the OCDC, "the appropriate Missouri state authority," and that the OCDC was investigating the allegations. Id. at 3 n.1. At the time of dismissal, neither side had any idea whether the misconduct alleged in the underlying suit was to be the subject of discipline, because Judge Ross had not made any determination of this matter. Thus, even assuming the Court was a tribunal of competent jurisdiction, the Court did not make any determination as to whether the alleged misconduct was to be the subject of discipline.

The policy language, specifically the definition of "claim," distinguishes between a lawsuit and a disciplinary proceeding. Moreover, the definition of "disciplinary proceeding" states explicitly that the proceeding must be brought "before a tribunal of competent jurisdiction which shall make a determination . . . as to whether such alleged professional misconduct is to be the subject of discipline." Judge Ross made no determination as to whether the alleged misconduct in the underlying suit was to be the subject of discipline. Rather, he dismissed the allegations of misconduct and noted that the matter was under investigation by the OCDC. The underlying suit, therefore, does not fall within the policy definition of "disciplinary proceeding."

    B.    <u>Are Plaintiffs Entitled to Disciplinary Proceeding Defense Cost Reimbursement up to the $100,000 Aggregate Limit Or Only the $25,000 Single Limit?</u>

Plaintiffs argue that both the underlying action and the OCDC proceedings are disciplinary proceedings, and that each of these disciplinary proceedings were brought against five separate insureds. Thus, they argue, there were a total of ten disciplinary proceedings brought against the insureds during the policy period. Because the total cost of defending all ten disciplinary

proceedings exceeded the $100,000 aggregate limit, plaintiffs state they are entitled to the $100,000 in disciplinary proceeding defense cost reimbursement.[3]

Liberty argues that plaintiffs are entitled only to the $25,000 limit for reimbursement for any one disciplinary proceeding. Liberty points to its Multiple Insureds, Claims and Claimants ("MICC") provision, which it argues limits the total reimbursement for disciplinary defense costs to the single limit of $25,000.

The MICC provision provides, in pertinent part:

> **Multiple Insureds, Claims and Claimants.** Neither the making of a **claim** against more than one of **you** nor the making of **claims** by more than one person or entity shall operate to increase **our** limits of liability. **Claims** alleging, based upon, arising out of or attributable to the same or related **wrongful acts** shall be treated as a single **claim** regardless of whether made against one or more than one of **you**.

LIU 1400 — MO Ed. 12 08 at 7.

Plaintiffs argue this provision is ambiguous because it effectively eliminates the policy's promise to reimburse the insureds for disciplinary proceeding defense costs up to $100,000. Also, plaintiffs state that the phrase "related wrongful acts" is ambiguous. These ambiguities, they say, must be resolved in favor of plaintiffs. Finally, plaintiffs argue that the underlying suit and disciplinary proceedings do not arise out of and are not attributable to the same or related wrongful acts.

Plaintiffs' arguments are not persuasive. Contrary to plaintiffs' assertion, the MICC provision does not eliminate the aggregate coverage of $100,000 provided in the provision for Disciplinary Proceeding Defense Cost Reimbursement. If separate disciplinary complaints alleging separate wrongful acts were brought during the policy period, the insured firm might be entitled to

---

[3]Because the Court has found the underlying suit was not a disciplinary proceeding (Part IV.A., supra), it will address only plaintiffs' argument that five disciplinary proceedings were brought before the OCDC.

the aggregate $100,000 limit. But where, as here, there is a single disciplinary complaint filed against multiple attorneys arising out of the same or related wrongful acts, the MICC unambiguously limits coverage to a single limit.

Plaintiffs refer many times to the fact that the OCDC assigned a separate file number to each attorney. The OCDC's internal procedures related to the numbering of its files, however, do not dictate whether claims arising out of the same wrongful acts shall be treated as a single disciplinary proceeding under the professional liability policy. Despite the five different file numbers, neither the OCDC nor plaintiffs filed any correspondence specific to any separate file. All correspondence between plaintiffs and the OCDC include a reference line in which all the five file numbers are listed. See Pls.' Mem. at Exs. 4, 8, 9, 17. Moreover, despite the five assigned file numbers, the Advisory Committee of the Supreme Court of Missouri referred to a single "investigation file." Id. at Ex. 4, 9. Both plaintiffs and the OCDC treated the complaint and the proceedings as one disciplinary proceeding.

Plaintiffs' argument that the term "related" is undefined and ambiguous is similarly unpersuasive. Missouri courts have found the term "related" as used in a MICC clause to be a broad word and not necessarily ambiguous. See Bar Plan Mut. Ins. Co. v. Chesterfield Mgmt. Assocs., 407 S.W.3d 621, 629 (Mo. Ct. App. 2013). Finding the reasoning of the California Supreme Court in a leading analogous case "sound and applicable," the Missouri court held the language of the MICC policy at issue not ambiguous because of the use of the term "related." "[A]s used in the policy and in the particular circumstances, [the term "related"] was not ambiguous and encompassed logically related as well as causally related acts." Id. (discussing a leading case on the issue Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co., 855 P.2d 1263 (Cal. 1993)).

Here the MICC states, "**Claims** alleging, based upon, arising out of or attributable to the same or related **wrongful acts** shall be treated as a single **claim** regardless of whether made against

one or more than one of **you**." James Hullverson's complaint filed with the OCDC alleged that five lawyers and the Hullverson Law Firm committed false advertising by advertising Thomas Hullverson and John Hullverson were practicing with the Hullverson Law Firm when both were inactive, living out of state, and not authorized to practice law in Missouri. The connection between the six counts alleged in the complaint is not attenuated, but rather closely tied, if not direct. See Bar Plan, 407 S.W.3d at 629. The six counts all relate to the alleged false advertising of the Hullverson Law Firm, but name a different defendant: John Hullverson (Count I), Thomas Hullverson (Count II), Stephen Ringkamp (Count III), Mark Becker (Count IV), Thomas Burke (Count V), and The Hullverson Law Firm (Count VI). Although the first two counts relate to the allegedly inactive and out-of-state attorneys, John and Thomas Hullverson, and the following four counts relate to the active attorneys at the Hullverson Law Firm, this fact does not make the wrongful acts in the OCDC proceedings unrelated. As used in the policy and in this particular circumstance, the language of the MICC is not ambiguous because of the use of the word "related." Pursuant to the MICC, these claims shall be treated as one claim under the policy, regardless of the fact that they were alleged against five separate attorneys and the Hullverson Law Firm.

Moreover, without reference to the MICC, the Disciplinary Proceeding Defense Cost Reimbursement provision states: "The most **we** will reimburse for any one **disciplinary proceeding** is $25,000." As discussed above, one complaint was filed with the OCDC and it was treated as one disciplinary proceeding both by plaintiffs and by the OCDC. Although the alleged misconduct of five attorneys was at issue, this alleged misconduct formed the basis of one complaint, one investigation file, and one disciplinary proceeding. See Pls.' Mem. at Exs. 4 and 9 (referring to a single investigation file).

For the foregoing reasons, the Court finds plaintiffs' recovery under the Disciplinary Proceeding Defense Cost Reimbursement is limited to the single limit of $25,000.

**Conclusion**

The underlying suit does not constitute a disciplinary proceeding under the policy, and therefore it does not trigger the application of the Special Benefit provision for Disciplinary Proceeding Defense Cost Reimbursement. Although the disciplinary proceeding before the OCDC involved alleged wrongful acts by five attorneys and the Hullverson Law Firm, the MICC provision operates to treat the disciplinary proceeding as a single claim subject to the $25,000 limit for any one disciplinary proceeding.

Accordingly,

**IT IS HEREBY ORDERED** that defendant Liberty Insurance Underwriters, Inc.'s motion for summary judgment as to Count V of plaintiffs' first amended complaint is **GRANTED**. [Doc. 63]

**IT IS FURTHER ORDERED** that plaintiffs' motion for summary judgment as to Count V of plaintiffs' first amended complaint is **DENIED**. [Doc. 69]

A Partial Judgment will accompany this Memorandum and Order.

_____
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this 22nd day of October, 2014.